787 A.2d 238 (2001)
346 N.J. Super. 167
SPAULDING COMPOSITES COMPANY, INC., Plaintiff-Respondent/Cross-Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Appellant/Cross-Respondent, and
Employers Insurance of Wausau, Allstate Insurance Company, Certain Underwriters at Lloyd's of London, London Market Company, Certain London Market Companies, American Home Insurance Company, Lexington Insurance Company, National Union Fire Continental Insurance Company, Industrial Underwriters Insurance, Defendants-Appellants, and
Aetna Casualty and Surety Company, (successor to Northbrook Insurance Company), American Centennial Insurance Company, Greenwich Insurance Company (successor to Harbor Insurance Company), New England Reinsurance Corporation, New Jersey Property-Liability Insurance Guaranty Association, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued October 10, 2001.
Decided December 26, 2001.
*239 Klett, Rooney, Lieber & Schorling, attorneys for appellant/cross-respondent Liberty Mutual Insurance Company (Thomas B. O'Brien, Jr. and Joseph B. Silverstein, Philadelphia, Pa, on the brief).
Lowenstein Sandler, attorneys for respondent/cross-appellant Spaulding Composites Company, Inc. (Robert D. Chesler, of counsel and on the brief; Janet C. Castellano, on the brief).
Martin P. Lavelle, New York City, attorney for respondents National Union Fire Insurance Company of Pittsburgh, PA and Lexington Insurance Company (Mr. Lavelle, on the brief).
Siegal & Napierkowski, attorneys for defendant/respondent Industrial Underwriters Insurance Company (Jerrald J. Hochman, on the letter brief).
Pitney, Hardin, Kipp & Szuch, attorneys for "Interested Party" The Caldwell Trucking PRP Group (Peter J. Herzberg, Morristown, and Kathy Dutton Helmer, on the brief).
Smith, Stratton, Wise Heher & Brennan, Princeton, attorneys for Amicus Curiae Insurance Environmental Litigation Association (Laura A. Foggan, Daniel E. Troy, Meredith Fuchs and Kimberly M. Hrabosky of counsel; Wendy L. Mager on the brief).
Appellants Allstate Insurance Company, Continental Insurance Company, Employers Insurance of Wausau, and Certain Underwriters of Lloyd's, did not file a brief.
*240 Before Judges SKILLMAN, WALLACE JR. and WELLS.
The opinion of the court was delivered by WALLACE, JR., J.A.D.
Plaintiff Spaulding Composites Company sought a declaration that the non-cumulation clause in the insurance policies of Liberty Mutual and certain other defendants did not apply to its claims resulting from environmental property damage. The trial judge granted plaintiff's motion for partial summary judgment, and issued an order declaring that "the non-cumulation" clause is inapplicable as a matter of law. We granted leave to appeal from this order. We conclude the contract language of the non-cumulation clause is clear and should be enforced.
We glean the following facts from the limited record on appeal. Spaulding allegedly sent lead-containing waste to a site in Fairfield Township from 1958 to 1973. Spaulding received notice of its potential liability in 1990, and filed bankruptcy in 1993. Subsequently, the bankruptcy court modified the automatic stay to permit the Caldwell Trucking PRP Group (Caldwell Group) and the United States Environmental Protection Agency (EPA) to maintain an action in the United States District Court of New Jersey for a declaratory judgment, and to recover insurance proceeds from Spaulding's insurers. The Caldwell Group filed such an action in July 1994. See Caldwell Trucking PRP Group v. Spaulding Composites Co., 890 F.Supp. 1247, 1250 (D.N.J.1995).
The insurers' moved to dismiss the Caldwell Group's direct action against them, and that motion was granted. Ibid. The district court found Spaulding could maintain its own action against its insurers. In July 1995, Spaulding filed a complaint in the Law Division against defendants who had issued primary or excess liability policies to Spaulding or its predecessors during the relevant period. Spaulding sought a judgment declaring that the insurers were obligated to undertake its defense in the Caldwell Group action, and to reimburse Spaulding for its costs in defending that action.
Spaulding eventually filed a motion for partial summary judgment against Liberty Mutual Insurance Company for a declaration that the non-cumulation clause in Liberty's insurance policies was inapplicable. One of Spaulding's attorneys, Robert Chesler, certified that Spaulding had purchased nine consecutive policies of primary insurance from Liberty covering the years 1975 to 1984. The first policy had a limit of $500,000, and the other eight policies each had a limit of $1 million. Each of the policies had a version of the clause commonly known as a non-cumulation clause. Further, Chesler certified that during this same period, Spaulding purchased between $23 million and $100 million of excess coverage each year.
Liberty opposed Spaulding's motion and included copies of its insurance policies issued during the nine-year period. Each of the policies issued by Liberty contained a non-cumulation clause entitled "Limits of Liability." The pertinent portion of each policy provided:
LIMITS OF LIABILITY
It is agreed that Section IV of the policy jacket, LIMITS OF LIABILITY, is deleted and replaced by the following:
LIMITS OF LIABILITY
Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain personal injury or property damage, (3) claims made or suits brought on account of personal *241 injury or property damage to which this policy applies, the Company's liability is limited as follows:

PERSONAL INJURY LIABILITY AND PROPERTY DAMAGE LIABILITY
(A) The limit of liability stated in the schedule as applicable to `each occurrence is the total limit of the company's liability for all damages because of personal injury or property damage as a result of any one occurrence.

* * * *
(C) For the purpose of determining the limit of the company's liability, all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

(D) If the same occurrence gives rise to personal injury or property damage which occurs partly before and partly within the policy period, the `each occurrence `limit and the applicable aggregate limit of this policy shall be reduced by the amount of each payment made by the company with respect to such occurrence under a previous policy or policies of which this policy is a replacement.
Spaulding urged that the non-cumulation clause did not apply because such clauses are not enforceable as a matter of law in environmental property damage cases, and therefore it was entitled to liability coverage from Liberty in the amount of $8.5 million rather than $1 million. Liberty argued that the clear language of the policy limited coverage to $1 million. The motion judge interpreted Owens-Illinois Inc. v. United Ins. Co., 138 N.J. 437, 478, 650 A.2d 974 (1994), to require nullification of the non-cumulation clause in an environmental property damage case. The judge applied the "continuous trigger rule" to treat the progressive damage as an occurrence within each year of the policy. The judge concluded the "non-cumulation clause" was inapplicable as a matter of law and granted partial summary judgment in favor of Spaulding. We granted Liberty's motion for leave to appeal.
Preliminarily, we are satisfied that the meaning and effectiveness of the non-cumulation clause presents a purely legal question that is suitable for decision on a motion for summary judgment. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995); see also Blum v. Prudential Ins. Co. of Am., 125 N.J.Super. 195, 197-98, 309 A.2d 905 (Law Div.1973), aff'd, 132 N.J.Super. 204, 333 A.2d 277 (App.Div.1975). We limit our review to a determination of that issue, and do not address whether there was an "occurrence" during any of the years Liberty insured Spaulding, or what effect the non-cumulation provisions of the Liberty policy may have upon the coverage provided under any of the various excess policies.
We turn to the essential issue in this appeal, which is whether the non-cumulation clause is unambiguous and enforceable.
"The source of any duty on the part of the Insurance Companies to defend actions or to pay any judgments is obviously in the contract of insurance." Owens-Illinois, supra, 138 N.J. at 446-47, 650 A.2d 974. Our Supreme Court has recognized that insurance policies are contracts of adhesion and are subject to special rules. Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 537, 582 A.2d 1257 (1990). Thus, in interpreting language in an insurance policy courts "assume a particularly vigilant role in ensuring their conformity to public policy and principles of fairness." Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175, 607 A.2d 1255 *242 (1992). Any ambiguity in an insurance policy should be resolved in favor of the insured. Ibid. "Nevertheless, only genuine interpretational difficulties will implicate the doctrine that requires ambiguities to be construed favorably to the insured." Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 273-74, 765 A.2d 195 (2001).
In determining whether there is an ambiguity, words in an insurance policy should be interpreted according to their plain and ordinary meaning. Voorhees, supra, 128 N.J. at 175, 607 A.2d 1255; Longobardi, supra, 121 N.J. at 537, 582 A.2d 1257. Moreover, public policy concerns alone are not sufficient to permit a finding of coverage in an insurance contract where its plain language cannot be read to provide that coverage. State v. Signo Trading Int'l, Inc., 130 N.J. 51, 66, 612 A.2d 932 (1992).
With these principles in mind, we turn to Liberty's contention that the non-cumulation of limits provision is clear and unambiguous. Liberty asserts that the purpose of the non-cumulation provision is to prohibit stacking or cumulation of policy limits to consecutive Liberty policies that may apply to the same occurrence loss.
The non-cumulation provision clearly states that all damage arising out of "continuous or repeated exposure to substantially the same general conditions constitute a single occurrence." Further, this provision provides that when a single occurrence gives rise to damage "partly before and partly within the policy period," the limits of liability of the policy "shall be reduced by the amount of each payment made by the company with respect to such occurrence under a previous policy or policies of which this policy is a replacement." In our view, this policy language is clear and unambiguous.
Unless our Supreme Court's decisions in Owens-Illinois, supra, and Carter-Wallace Inc. v. Admiral Ins. Co., 154 N.J. 312, 712 A.2d 1116 (1998), preclude us from giving effect to the clear policy language, the non-cumulation provisions should be enforced. In Owens-Illinois, the insured sought a declaration that its two lead insurance carriers must provide coverage for Owens Illinois' asbestos related personal injury and property damage claims. The Chancery judge held that all insurers whose policies were triggered under a continuous-trigger theory or injury in-fact theory were jointly and severally liable to the extent of the policy limits. We affirmed in part, reversed in part, and remanded in part. Owens-Illinois, Inc. v. United Ins. Co., 264 N.J.Super. 460, 625 A.2d 1 (App.Div.1993).
The Supreme Court granted certification to address whether a continuous trigger theory applied, and if so, what would be a fair method of allocation of coverage. The Court explained that the term trigger was merely a label for the event or events that "under the terms of the insurance policy determines whether a policy must respond to a claim in a given set of circumstances." Owens-Illinois, supra, 138 N.J. at 447, 650 A.2d 974. Ultimately, the Court held that "when a progressive indivisible injury or damage results from exposure to injurious conditions for which civil liability may be imposed, courts may reasonably treat the progressive injury or damage as an occurrence within each of the years of a [covered] policy." Id. at 478, 650 A.2d 974. Thus, the continuous-trigger theory required each insurer providing coverage during the period to respond to the personal injury claims. Id. at 478-79, 650 A.2d 974. Similarly, the Court found that property damage attributable to long-term embedding of contaminates was sufficiently analogous to personal injury to warrant use of a continuous trigger *243 approach. In addressing the method of allocation among multiple triggered policies, the Court held that a fair method of allocation is one that is related to both the time on the risk and the degree of the risk assumed. Ibid. Therefore, the Court allocated "the losses among the carriers on the basis of the extent of the risk assumed, i.e., proration on the basis of policy limits, multiplied by years of coverage." Id. at 475, 650 A.2d 974.
Further, the Court noted that "other insurance" clauses, which are provisions designed to preclude a double recovery when multiple concurrent policies provide coverage for a loss, were not generally applicable in a continuous triggered situation where successive, rather than concurrent, policies were at issue. Id. at 470-71, 650 A.2d 974. The Court stated:
The other usual principles of interpretation of contracts of insurance do not provide much guidance. As the Appellate Division noted, "O-I was a sophisticated insured and cannot seek refuge in the doctrine of strict construction by pretending it is the corporate equivalent of the unschooled, average consumer." 264 N.J.Super. at 489, 625 A.2d 1. Assessing the objectively reasonable expectations of a policyholder in this context of long-tail injuries is also very difficult. Sparks v. St. Paul Ins. Co., 100 N.J. 325, 330, 495 A.2d 406 (1985). At least in the case of property damages due to environmental contamination, the retroactive imposition of absolute liability under laws like CERCLA, 42 U.S.C. §§ 9601-9675, was surely unknown, if not unknowable.
And the doctrine of contra preferentem, construing any ambiguity against the insurer as drafter, Uniroyal, supra, 707 F.Supp. at 1376, can produce uneven results. For example, in Eagle-Picher Industries v. Liberty Mutual Ins. Co., 523 F.Supp. 110 (D.Mass.1981), aff'd, as modified, 682 F.2d 12 (1st Cir.1982), cert. denied, 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983), the insured preferred a manifestation theory. (On appeal, the insured in Eagle-Picher advocated the continuous-trigger theory. 682 F.2d at 16.) In Forty-Eight Insulations, supra, 633 F.2d 1212, the exposure theory afforded the insured the most coverage. To have shifting rules of interpretation that depend on the configuration of insurance coverage is unacceptable to us.
The language of the policies does not itself yield either result and the usual rules of interpretation are less helpful in this context.

[Id. at 471, 650 A.2d 974].
The Court also noted that the law of environmental liability insurance "will have to develop over time and trial courts must be flexible in responding to new fact situations." Id. at 478, 650 A.2d 974.
In Carter-Wallace, supra, the Court addressed how excess insurance should be considered when allocating responsibility under a continuous trigger of liability over many years. Initially, the Court rejected both the insured and the insurer's proposed allocation methods. The Court noted that the insurer's method of horizontal exhaustion subordinated its coverage responsibility to all primary and first-level excess policies in effect during the entire trigger period, and was based on its policy language that required the exhaustion of underlying limits of coverage before its second-level excess policy attached. Carter-Wallace, supra, 154 N.J. at 323, 712 A.2d 1116. The Court noted the similarity between the insurer's exhaustion provision and the "other insurance" clauses that were found not to apply in a continuous trigger context. Id. at 324-25, 712 A.2d 1116. The Court expressly found that it *244 was "unable to find the answer to the allocation language in the polic[y]." Ibid. Similarly, the Court rejected the insured's approach of treating the loss sustained during the entire period as if it occurred in only one year before looking to the excess coverage limits. Ibid.
Instead, in Carter-Wallace, the Court adopted the approach of Judge Brotman in Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co., 978 F.Supp. 589 (D.N.J.1997), rev'd on other grounds, 177 F.3d 210 (3rd Cir.1999). Id. at 325, 712 A.2d 1116. The Court noted that, under similar circumstances, Judge Brotman "adopted a method that vertically allocated each policy in effect for that year, beginning with the primary policy and proceeding upward through each succeeding excess layer." Id. at 326, 712 A.2d 1116. The Court gave the following example to demonstrate the fair allocation of losses among carriers to the extent of the risk assumed by each:
Assume that primary coverage for one year was $100,000, first-level insurance totaled $200,000 and second-level excess coverage was $450,000. If the loss allocated to that specific year was $325,000, the primary insurer would pay $100,000, the first-level excess policy would be responsible for $200,000 and the second-level excess policy would pay $25,000.

[Id. at 326-27, 712 A.2d 1116.]
The Court found this approach promoted efficiency by spreading the cost, was simple, respected the difference between primary and excess insurance while not permitting excess insurers to avoid coverage in long-term continuous-trigger cases, and would introduce "a degree of certainty and predictability" in a complex field. Ibid. In particular, the Court expressed "that that solution is consistent with the contract language," as the second-level excess policy "will not be pierced unless and until the primary and first-level excess policies in effect for a given year have been expended." Id. at 327, 712 A.2d 1116.
We perceive no inconsistency between the Court's approach in Owens-Illinois and Carter-Wallace and our approach of applying the clear language of Liberty's non-cumulation clause. In both Owens-Illinois and Carter-Wallace, the Court expressed that it was unable to find the answer to the allocation issue in the language of the policy and found "the traditional rules of interpretation to be unhelpful." Owens-Illinois, supra, 138 N.J. at 468-471, 650 A.2d 974; Carter-Wallace, supra, 154 N.J. at 322, 712 A.2d 1116. Therefore, the Court adopted a method that was fair in light of the complexities of environmental litigation. Here, we find the answer in the clear language of the policy. We are compelled to apply the provisions of the policy that a "continuous" or "repeated" exposure shall be treated as "one occurrence" and that "the applicable aggregate limit of [the] policy shall be reduced by the amount of each payment made by the company with respect to such occurrence under a previous policy or policies of which this policy is a replacement." Consequently, Liberty's non-cumulative clause should be enforced to limit its aggregate liability for a continuous or repeated exposure to $1 million.
We are unpersuaded by Caldwell Group's contention that the non-cumulation clause is an "other insurance" clause. Caldwell Group notes that there are three types of "other insurance" clauses: (1) excess clauses (i.e. the policy pays an excess coverage), (2) pro-rate clauses (i.e. the policy pays a pro-ratio share of the loss) and (3) escape clauses (i.e. the policy pays nothing). Caldwell Group contends that Liberty's non-cumulation clause is an escape clause which does not apply in a continuous trigger context. See Carter-Wallace, *245 supra, 154 N.J. at 324-325, 712 A.2d 1116. Caldwell Group cites UTI Corp. v. Fireman's Fund Ins. Co., 896 F.Supp. 362 (D.N.J.1995), in support of its argument. In UTI, the "non-cumulation" clause was contained within the "other insurance" clause and provided that coverage of the policy shall apply as excess of any other applicable coverage and that:
if the insured has "other insurance" with this Company covering a claim also covered by this policy, the insured must elect which policy shall apply and the Company shall be liable under the policy so elected and shall not be liable under any other provision.
The trial judge concluded the clause was an escape clause because, although the insurer collected premiums for several blanket excess policies, it limited coverage so that the insurer would only be liable under one such policy for any claim made by the insured. Id. at 378.
We disagree that the non-cumulation provision in Liberty's policy is an "other insurance" clause. As noted by the Court in Carter-Wallace, "other insurance" clauses are "designed to preclude double recovery when multiple concurrent policies provide coverage for a loss." Carter-Wallace, supra, 154 N.J. at 322, 712 A.2d 1116 (emphasis added). Liberty's non-cumulation clause does not involve concurrent policies. Rather it is addressed to an occurrence that may span successive policy periods. Further, the "other insurance" provisions of Liberty's policies were contained in separate endorsements from the non-cumulation clause. Simply put, Liberty's non-cumulation clause did not represent an escape clause, or other insurance clause.
We conclude that Liberty's non-cumulation of limits provision is clear, unambiguous and enforceable. We reverse the judgment and remand to enter judgment in favor of Liberty.