980 A.2d 1 (2009)
410 N.J. Super. 114
CSFB 2001-CP-4 PRINCETON PARK CORPORATE CENTER, LLC, a New Jersey Limited Liability Company, Plaintiff-Respondent,
v.
SB RENTAL I, LLC, a New Jersey Limited Liability Company, Estate of Philip S. Seltzer, Eric H. Seltzer, and Estate of David J. Seltzer, his heirs, devisees and personal representatives, and their or any of their successors in right, title and interest, and L.G. Financial Consultants, Inc., Defendants-Appellants.
Docket No. A-6307-07T2
Superior Court of New Jersey, Appellate Division.
Argued June 8, 2009.
Decided August 11, 2009.
*2 Jeffrey S. Beenstock, Voorhees, argued the cause for appellants (Ballard, Spahr, Andrews & Ingersoll, LLP, attorneys; Mr. Beenstock and Joseph T. Ciampoli, on the briefs).
Jaimee Katz Sussner, Newark, argued the cause for respondent (Herrick, Feinstein LLP, attorneys; Scott T. Tross and Ms. Sussner, of counsel; Ms. Sussner, on the brief).
Before Judges STERN,[1] CARCHMAN and PARRILLO.
The opinion of the court was delivered by
PARRILLO, J.A.D.
At issue is whether a non-recourse carve-out clause in a mortgage note, providing that borrowers are personally liable to lender for damages resulting from violation of a particular loan obligation, is a liquidated damages provision, and if so, whether it constitutes an unenforceable penalty. Defendant SB Rental I, LLC (SB Rental) and its principals (collectively, defendants) appeal from a summary judgment in favor of plaintiff CSFB 2001-CP-4 Princeton Park Corporate Center, LLC (CSFB or plaintiff), adjudicating defendants personally liable in the amount of $5,195,932.72. We affirm, concluding, as a matter of first impression in this State, that the disputed clause fixes liability rather than damages and is therefore fully enforceable.
The facts are undisputed. On May 2, 2001, plaintiff's predecessor in interest, Credit Suisse First Boston Mortgage Capital, LLC, gave a mortgage loan to SB Rental in the amount of $13,300,000. The *3 loan was memorialized by a note and secured by a first mortgage encumbering commercial property located on Cornwall Road in South Brunswick. The loan was also secured by a guaranty of payment executed by SB Rental's principals, defendants Philip Seltzer, Eric Seltzer, and David Seltzer (now deceased) (collectively, guarantors).
The loan was a non-recourse obligation, which precluded the lender from seeking recovery against either SB Rental or its principals in the event of a default. The mortgage note, however, contained a carve-out clause, providing that the debt would be fully recourse if the borrower failed to obtain the lender's prior written consent to any subordinate financing encumbering the property. Specifically, Paragraph 13 of the note provides as follows:
Notwithstanding anything to the contrary in this Note or any of the Loan Documents . . . (B) the Debt shall be fully recourse to Maker in the event that. . . (iii) Maker fails to obtain Payee's prior written consent to any subordinate financing or other voluntary lien encumbering the Mortgaged Property. . . .
The guaranty held the guarantors liable to the same extent as provided in the loan documents:
Notwithstanding anything to the contrary in any of the Loan Documents . . . (ii) Guarantor shall be liable for the full amount of the Debt in the event that . . . (C) Borrower fails to obtain Lender's prior written consent to any subordinate financing or other voluntary lien encumbering the Mortgaged Property. . . .
During the term of the loan, on May 10, 2004, SB Rental procured $400,000 in subordinate financing and pledged a $400,000 second mortgage on the property in favor of L.G. Financial Consultants, Inc. (L.G.) without first obtaining plaintiff's written consent. In so doing, defendants triggered the non-recourse carve-out provision of the loan documents, rendering the loan fully recourse as to SB Rental and the guarantors. However, the L.G. mortgage was fully satisfied seven months later, in December 2004, and was therefore terminated, although L.G. neglected to timely discharge the obligation. In any event, eighteen months later, in May 2006, SB Rental failed to make its monthly mortgage payment to CSFB, presumably because of the loss of its sole tenant and rental income stream, and has not made any principal or interest payments since then.
Shortly thereafter, plaintiff instituted a foreclosure action, which SB Rental did not contest. Accordingly, summary judgment was entered in plaintiff's favor on March 28, 2007, and the property eventually sold at sheriff's sale. Consequently, plaintiff instituted the present action against defendants in the Law Division, seeking recovery of the deficiency on the balance of the May 2, 2001 mortgage note, reduced by the proceeds of the sheriff's sale. Following defendants' answer, plaintiff moved for summary judgment, seeking full recourse liability against both SB Rental and its principals based on their subordinate financing default. Defendants opposed such relief, arguing that since plaintiff was not harmed by the added encumbrance on the property, the breach was unrelated to any damages suffered by plaintiff and therefore the non-recourse carve-out clause extracted an unenforceable penalty in this instance.
The motion judge disagreed, finding that the damages sought by plaintiff were neither speculative nor estimated, but actual, ("equal to the outstanding loan balance and nothing more") and fair, ("[t]he defendants hav[ing] received the benefit of their bargain by receiving and retaining the loan *4 proceeds"). Concluding that the disputed provision addresses liability rather than damages, the judge emphasized the business sophistication of defendants, who acted with full knowledge and understanding of the carve-out position:
These are sophisticated defendants that were dealing at arms length when they signed the absolute and unconditional guarantee to govern the instances in which recourse liability would be triggered. The parties understood the provisions, and how they would operate, when they entered into the agreement, as they bargained for the opportunity to avoid recourse liability in certain instances, yet engaged in conduct that they knew would implicate personal liability if discovered.
On appeal, defendants mainly argue, as they did below, that the non-recourse carve-out clause is unenforceable as a liquidated damages provision because the penalty extracted from the borrower's breach of a covenant not to further encumber the mortgaged property bears no reasonable relationship to any harm suffered by the lender. This argument fails.
As a threshold matter, summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. R. 4:46-2(c); Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). Cases involving contract interpretations are particularly suited to disposition by summary judgment. Spaulding Composites Co. v. Liberty Mutual Ins. Co., 346 N.J.Super. 167, 173, 787 A.2d 238 (App.Div.2001), rev'd on other grounds sub nom., Spaulding Composites Co. v. Aetna Cas. & Sur. Co., 176 N.J. 25, 819 A.2d 410 (2003), cert. denied, 540 U.S. 1142, 124 S.Ct. 1061, 157 L.Ed.2d 953 (2004). Furthermore, the decision whether a stipulated damages clause is enforceable is a question of law for the court. Wasserman's Inc. v. Twp. of Middletown, 137 N.J. 238, 257, 645 A.2d 100 (1994); 218-220 Market St. Corp. v. Krich-Radisco, Inc., 124 N.J.L. 302, 304, 11 A.2d 109 (E. & A.1940).
Equally well-settled is that when the terms of a contract are clear, "it is the function of a court to enforce it as written and not to make a better contract for either of the parties." Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717 (1960). Absent ambiguity, the intention of the parties is to be ascertained by the language of the contract. Dontzin v. Myer, 301 N.J.Super. 501, 507, 694 A.2d 264 (App.Div.1997). "If the language is plain and capable of legal construction, the language alone must determine the agreement's force and effect." FDIC v. Prince George Corp., 58 F.3d 1041, 1046 (4th Cir. 1995). See also Royal Ins. Co. v. Rutgers Casualty Ins. Co., 271 N.J.Super. 409, 416, 638 A.2d 924 (App.Div.1994).
Here, there is no dispute that the loan made by plaintiff to SB Rental is a non-recourse loan, excluding the borrower and guarantors from personal liability for the remaining debt upon default and leaving the creditor's recourse solely to repossession of the property given as security for the loan. The loan documents, however, expressly carve out from this exemption certain breaches that implicate personal liability, including the failure to obtain the lender's consent to any subordinate financing or other lien encumbering the mortgaged property. This is unambiguous language. Further, this was a commercial transaction negotiated between business entities with comparable bargaining power. The parties knew and agreed to the carve-out of the non-recourse loan, which, because it affects the value of the collateral, was a material term in acquiring the $13 million loan. Where, as here, sophisticated *5 parties agree to carefully crafted terms, they should be held to the plain and clear language they chose.
Contrary to defendants' argument, the carve-out clause is not a liquidated damages provision, much less an unenforceable penalty. A clause is a liquidated damages provision if the actual damages from a breach are difficult to measure and the stipulated amount of damages is "a reasonable forecast of the provable injury resulting from [the] breach." Wasserman's, supra, 137 N.J. at 249, 645 A.2d 100. Such clauses are deemed "presumptively reasonable" and therefore enforceable, and "the party challenging [a stipulated damages provision] should bear the burden of proving its unreasonableness." Id. at 252, 645 A.2d 100. Because the harm is necessarily incapable of accurate estimate, Westmount Country Club v. Kameny, 82 N.J.Super. 200, 206, 197 A.2d 379 (App.Div.1964), "`reasonableness' emerges as the standard for deciding the validity of stipulated damages clauses." Wasserman's, supra, 137 N.J. at 249, 645 A.2d 100. The amount fixed is unreasonable if it serves not as a pre-estimate of probable actual damages, but rather as "punishment," Westmount Country Club, supra, 82 N.J.Super. at 205, 197 A.2d 379, grossly disproportionate to the actual harm sustained.
Non-recourse carve-out clauses like the one here are not considered liquidated damages provisions because they operate principally to define the terms and conditions of personal liability, and not to affix probable damages. Generally speaking, because non-recourse loans may create issues of a borrower's motivation to act in the best interest of the lender and the lender's collateral, "lenders identified defaults that posed special risks and carved them out of the general nonrecourse provision." Portia Owen Morrison and Mark A. Senn, Carving Up the `Carve-Outs' in Nonrecourse Loans, 9 Prob. & Prop. 8 (1995). These carve-outs, which are perceived to affect the value of the collateral that secures the loan, afford the lender the protection required by causing the debtor and any guarantors to be personally liable, thus enabling the creditor to look beyond simply the mortgaged property for repayment of the loan. In other words, whereas the non-recourse nature of the loan operates as an exemption, the carve-outs exist to implicate personal liability.
The carve-out clause is not a liquidated damages provision for yet another reason: it provides for only actual damages. Unlike the typical stipulated damages provision which reasonably estimates an amount otherwise difficult to compute, the carve-out clause permits the lender to recover only damages actually sustained, namely the amount remaining on the loan at the time of breach. Such an amount is fixed by the terms of the loan and is therefore neither speculative nor incalculable. As noted, this action involves a loan made by plaintiff to SB Rental, who, along with the guarantors, agreed to its repayment, having received the full benefit of the contract. Plaintiff, in turn, made the loan with the assurance of full repayment. In filing this lawsuit, plaintiff simply seeks the amount left on the loan at the time of ultimate default. This amount is the actual damage to plaintiff based on defendants' failure to make mortgage payments. Since the carve-out clause imposes personal liability for plaintiff's actual damages, it is not a liquidated damages provision, much less an unconscionable penalty.
Nonetheless, defendants contend that since the breach that triggered personal liability was eventually cured, resulting in no harm to plaintiff, enforcement of the carve-out here is unfair and unjust. We disagree.
*6 Although the issue has not previously been decided in this State, other courts have uniformly held that non-recourse carve-out provisions are valid and enforceable. See, e.g., Blue Hills Office Park LLC v. J.P. Morgan Chase Bank, 477 F.Supp.2d 366, 377-383 (D.Mass.2007) (transfer of mortgaged property without the lender's consent and various other conduct rendered the borrower and guarantors fully liable for a loan deficiency); First Nationwide Bank v. Brookhaven Realty Assocs., 223 A.D.2d 618, 637 N.Y.S.2d 418 (N.Y.App.Div.), appeal dismissed, 88 N.Y.2d 963, 647 N.Y.S.2d 715, 670 N.E.2d 1347 (1996) (bankruptcy filing triggered recourse liability under a loan carve-out provision); Prince George Corp., supra, 58 F.3d at 1045-1050 (recourse liability affirmed where the borrower filed a bankruptcy petition in violation of a carve-out provision).
In Blue Hills Office Park, the lender made a $33 million loan evidenced by a promissory note and secured by a mortgage and a guaranty. 477 F.Supp.2d at 370. The promissory note and guaranty both contained a non-recourse carve-out provision that made the loan fully recourse in the event mortgaged property was transferred without the lender's consent. Id. at 377-78, 381. When the borrower settled a zoning board appeal in exchange for payment of $2 million that was diverted by the borrower to a hidden account of an affiliate, the lender argued that mortgaged property had been transferred without its consent, rendering the loan fully recourse. Id. at 377. The court agreed, finding the borrower and the guarantors jointly and severally liable for the $17.5 million balance of the mortgage loan. Id. at 378-83.
In Prince George Corp., supra, the lender brought an action for a deficiency judgment following a borrower's bankruptcy filing in violation of a non-recourse carve-out provision in the mortgage note. 58 F.3d at 1044-45. The Fourth Circuit rejected the borrower's argument that it possessed a statutory right to avail itself of bankruptcy protection, holding that the carve-out provision did not waive, or even compromise, the borrower's right to file bankruptcy, but merely imposed a consequence in the event the borrower exercised that right. Id. at 1046-47. Having not contravened South Carolina's statutory foreclosure scheme, the carve-out provision was not void as against public policy, and thus, under the clear and unambiguous terms of the note, the borrower was not entitled to escape liability for a deficiency judgment if it voluntarily became part of a proceeding that impaired the lender's right of recourse to the collateral. Id. at 1047-49.
It matters not, as defendants argue, that they eventually cured the very breach that triggered their personal liability and that no harm accrued to plaintiff as a result thereof. In First Nationwide Bank, supra, a lender made a non-recourse loan to a real estate partnership that provided for full recourse liability upon the commencement of a voluntary bankruptcy proceeding that was not dismissed within 90 days. 223 A.D.2d at 619, 637 N.Y.S.2d 418. Nevertheless, the partnership filed a voluntary bankruptcy petition that was dismissed after the 90-day period had expired. Ibid. The court held that even though the default was "cured" in the sense that the bankruptcy was ultimately dismissed, the subsequent dismissal was ineffective to avoid recourse liability for the partnership and its partners. Id. at 620-21, 637 N.Y.S.2d 418.
Similarly here, the fact that the subordinate financing was paid off well before defendants' ultimate default on payment of the principal loan does not alter the fact that defendants breached the very obligation *7 identified by both parties as posing a special risk to plaintiff, and therefore requiring the covenant's special protection. By further encumbering the property, even if only temporarily, defendants' action had the potential to affect the viability and value of the collateral that secured the original loan. Indeed, it cannot be said with any certainty that the subordinate financing in this case was entirely unrelated to defendants' ultimate default on their mortgage payments. In any event, the fact that such potential may not have actualized does not diminish the breach of obligation nor vitiate its contracted-for consequences. Having freely and knowingly negotiated for the benefit of avoiding recourse liability generally, and agreeing to the burden of full recourse liability in certain specified circumstances, defendants may not now escape the consequences of their bargain.
We have considered defendants' remaining issues in light of the record, the applicable law and arguments of counsel, and we are satisfied none them is of sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] Judge Stern did not participate in oral argument. However, the parties consented to his participation in the decision.