**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1187-23

VL NORTH LLC, d/b/a
ONE TEN,

     Plaintiff-Respondent,

v.

SEAN ALLEN,

     Defendant,

and

SUZIE WALSHE and
GEMMA WALSHE,

     Defendants-Appellants.

Argued January 29, 2025 – Decided September 3, 2025

Before Judges Currier, Marczyk, and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1096-23.

Henry P. Wolfe argued the cause for appellants (The Dann Law Firm, PC, attorneys; Javier L. Merino, Andrew R. Wolf, and Henry P. Wolfe, on the briefs).

Gerald L. Maatman, Jr., (Duane Morris LLP) of the Illinois and New York bars, admitted pro hac vice, and Paul P. Josephson argued the cause for respondent (Duane Morris LLP and Gerald L. Maatman, Jr., attorneys; Gerald L. Maatman, Jr., Paul P. Josephson, and James R. Hearon, on the brief).

PER CURIAM

Defendants Suzie Walshe and Gemma Walshe[1] appeal from the trial court's November 8, 2023 order granting plaintiff VL North LLC, d/b/a One Ten's motion to dismiss defendants' class action counterclaim under Rule 4:6-2(e). Following our review of the record and the applicable legal principles, we affirm.

I.

In June 2021, defendants entered into a residential lease agreement with plaintiff for a property in Jersey City for a two-year term to run from July 2021 to July 2023. The lease agreement contained an "Apartment Lease Contract" (Lease) and several Lease "Riders." Section two of the Lease required defendants to pay rent on the "first day of each month. The rent [was] considered late if . . . received after the 5th of the month." Section three of the Lease, titled

---

[1] Because defendants share the same last name, we refer to them by their first names to avoid confusion. We intend no disrespect in doing so. Gemma co-signed the lease. Defendant Sean Allen also signed the lease but is not a party to this appeal.

"Additional Rent," specified "[i]f the Tenant fails to comply with any agreement in [the] Lease, . . . [t]he Landlord may charge . . . 'Additional Rent,'" including "attorney's fees and court costs incurred by the Landlord as a result of the Tenant's violation," as well as "a late fee of 5% of the unpaid rent . . . if rent is not received . . . by the fifth . . . of the month."

To incentivize two-year rental commitments, plaintiff offered certain rent concessions totaling $17,920. These incentives were memorialized in section one of a sub-agreement lease rider, titled "Rent Concession or Other Rent Discount Rider" (Concession Rider). The top of the Concession Rider states, "[i]f any terms of this [Concession] Rider conflict with the Lease, the terms of this [Concession] Rider shall be controlling." Section one of the Concession Rider, titled "Concession/Discount Agreement," provides "As consideration for your agreement to lease or remain in your apartment and to fulfill your Lease obligations throughout the full term of your Lease, you will receive the following rent concession and/or discount[:] $4,305 Rent Concession – August, September, October & November 2021."[2] Section two of the Concession Rider, titled "Concession Cancellation and Charge-Back," specified such discounts

---

[2] The clause further provided for a $1,000 rent credit and $195 per month parking concession for August through November 2021.

3                                                                    A-1187-23

were an "incentive" "with the understanding that [defendants would] fulfill [their] obligations under the Lease through the entire term." Section two further provided the concession agreement would

> **be immediately terminated, and you will be required to immediately repay to the Landlord the amounts of all concessions or discounts that you have actually received without further notice, which will . . . be deemed additional rent, if any of the following shall have occurred in Landlord[']s sole opinion**:
>
> · Your Lease is terminated early due to your default or one's own discretion (for example, if you abandon the premises without paying rent, terminate your lease early for any reason or are evicted)
>
> · Your monthly rent was received late anytime throughout the lease term
>
> · You are not current in the payment of any additional rent that may have accrued over the period of the lease term, including late charges, insufficient funds fees, court costs, attorney's fees, etc.

Defendants failed to make timely rent payments in April 2022 and October 2022. In both instances, plaintiff initially sought to enforce the charge back provision but agreed to rescind it if defendants became current, which they did both times.

A-1187-23

In June 2022, the parties executed a revised Lease solely to change defendants' assigned parking spot. The revised Lease incorporated all of the material terms and conditions of the Lease, including the Concession Rider.

In January 2023, defendants again failed to make timely rent payments. In early March 2023, Gemma went to plaintiff's office and attempted to make the outstanding rent payments and offered to pay off the rest of the lease upfront. Plaintiff informed her that defendants had been referred for eviction. A few days later, Suzie emailed plaintiff "proposing she would pay the remaining rent balance for the rest of the [L]ease if [plaintiff] could remove the concession charge[]backs." On the same day, plaintiff responded the concession charge backs would not be removed. On March 6, Suzie replied, stating she did not have access to the eviction documents and was unable to pay the requested concession charge backs.

Plaintiff responded on March 7, providing the eviction case number and stating "the concession charge[]backs are due and owing and will not be reversed. We aren't interested in entering a payment plan for the balance." Plaintiff instituted eviction proceedings (the eviction action) against defendants on March 8, 2023.

A-1187-23

On March 28, 2023, plaintiff filed a complaint (the collection action) against defendants to recover unpaid rent totaling $23,042.52, which included the $17,920 rent concession charge backs, one month of unpaid rent, a five percent late fee for February 2023, various other fees and charges, and attorney's fees and costs.

On May 31, 2023, defendants filed an answer to the collection action and a class action counterclaim against plaintiff. The counterclaim was brought on behalf of a class pursuant to Rule 4:32-1(b)(2) and subclass pursuant to Rule 4:32-1(b)(3). The class was defined as all persons in the State of New Jersey, who over the last six years

> (1) . . . entered into a lease for a residential apartment or other residential living space from [plaintiff] . . . , and as part of entering into the lease, (2) signed a Lease Rider or other Lease Agreement document with terms the same or similar to the Lease Rider provided to [defendants] that contained the "Concession Cancellation and Charge-Back" provision or similar provision in which [plaintiff] can claw back the amounts offered as concessions.

The subclass was defined as all members of the class from whom plaintiff "sought, is seeking to, or has clawed back the concessions amount each was provided."

6

On behalf of the putative class, defendants asserted plaintiff violated the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -229. Specifically, defendants alleged the charge back provision in the Concession Rider was a purported liquidated damages clause; the amount sought under the charge back provision constituted an unreasonable penalty; and plaintiff's use and enforcement of the charge back provision in residential leases constitutes an abusive, unconscionable, or deceptive practice in violation of the CFA.

In July 2023, defendants surrendered possession of the apartment, and plaintiff dismissed the eviction action. In July 2023, plaintiff moved to dismiss defendants' counterclaim, contending defendants' CFA theory failed to state a viable claim or a viable class action claim. In August 2023, plaintiff filed a consent order to voluntarily dismiss its collection action with prejudice. The consent order specified the dismissal was to plaintiff's collection action only, and defendants' counterclaim remained "pending for independent adjudication."

In October 2023, the trial court conducted oral argument on plaintiff's motion to dismiss the counterclaim and strike the class action allegations. On November 8, 2023, the trial court rendered an oral decision, as discussed more fully below, and accompanying order granting plaintiff's motion to dismiss with prejudice.

7

II.

On appeal, defendants argue plaintiff's "free rent" charge back provision is a poorly disguised, unlawful penalty clause. They further assert the trial court erred in dismissing the CFA counterclaims arising from plaintiff's use and enforcement of a disguised penalty clause in the residential lease. They assert the trial court erred in ruling that defendants' claims are barred by "ratification" of the Lease. Defendants also maintain the trial court erred in striking defendants' class action allegations without the opportunity for class discovery.

"Rule 4:6-2(e) motions to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo." Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, 237 N.J. 91, 108 (2019)). In considering a Rule 4:6-2(e) motion, the "reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Ibid. (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). The test for determining the adequacy of a pleading is "whether a cause of action is 'suggested' by the facts." Printing Mart-Morristown, 116 N.J. at 746 (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)).

A-1187-23

"Dismissals under Rule 4:6-2(e) are ordinarily without prejudice. . . . [A] dismissal with prejudice is 'mandated where the factual allegations are palpably insufficient to support a claim upon which relief can be granted,' Rieder v. State, 221 N.J. Super. 547, 552 (App. Div. 1987), or if 'discovery will not give rise to such a claim,' Dimitrakopoulos, 237 N.J. at 107." Mac Prop. Group LLC & The Cake Boutique LLC v. Selective Fire & Cas. Ins. Co., 473 N.J. Super. 1, 17 (App. Div. 2022) (citations reformatted). Finally, "[t]he enforceability of a stipulated damages clause presents a legal issue," and thus we review such matters de novo. Holtham v. Lucas, 460 N.J. Super. 308, 316 (App. Div. 2019).

Defendants assert the charge back provision at issue is a stipulated damages clause because it provided for payment of specified damages in the event of a breach. They argue the trial court failed to recognize the difference between stipulated and liquidated damages clauses. They contend the court also erred in finding the rent concession charge back was reasonable.

Defendants maintain the rent concessions were not offered as consideration to make full and timely payments, as that contractual duty arises from the Lease itself, not the Concession Rider. They argue the charge back provision was in consideration for strict compliance with the Lease, induced by the threat of having to immediately repay upon breach. Defendants also assert

plaintiff admits the concession charge back provision was "not an estimate of future damages resulting from a breach."

Defendants further contend the charge back provision is a "disguised penalty" under the Restatement.[3] They note there are no cases in New Jersey on point, but direct our attention to cases outside our jurisdiction, such as Raffel v. Medallion Kitchens, 139 F.3d 1142 (7th Cir. 1998), to support their position.

Plaintiff counters the charge back provision is not a liquidated damages clause, as the amounts due thereunder are not an estimate of future damages resulting from a breach. Rather, the provision only entitled plaintiff to recover the "exact amount" of the concessions (including rent) that it granted to defendants in the event defendants failed to fulfill their obligations under the contract. It argues the concessions are a "sum certain" rather than "an estimate of future damages." Plaintiff asserts the charge back provision is not an unlawful penalty, as the provision only permits it to recover its actual costs of

_____

[3] "Sometimes parties attempt to disguise a provision for a penalty by using language that purports to make payment of the amount an alternative performance under the contract, that purports to offer a discount for prompt performance." Restatement (Second) of Contracts § 356 cmt. c. (Am. L. Inst. 1981).

A-1187-23

the concessions granted in exchange for defendants' promise to make prompt payment and fulfill the terms of the Lease.

Plaintiff acknowledges the dearth of New Jersey cases dealing with such a provision and points to other jurisdictions who have found such provisions do not constitute liquidated damages and are not penalties.  Manning & Assocs. Pers., Inc. v. Trizec Props., Inc., 442 S.E.2d 783, 785 (Ga. App. 1994); Frank v. Sandy Rothschild & Assocs., Inc., 4 S.W.3d 602, 606 (Mo. App. 1999); Lesatz v. Standard Green Meadows, 416 N.W.2d 334, 337 (Mich. App. 1987).

Plaintiff asserts the charge back provision is similar to a provision at issue in CSFB 2001-CP-4 Princeton Park Corp. Center, LLC v. SB Rental I, LLC, 410 N.J. Super. 114, 121 (App. Div. 2009), because it only imposes liability on defendants to pay the concessions they received at no cost, and defendants only became liable in the event of default.

Plaintiff contends that even if the concession charge back provision is construed as an estimate of future damages, the amount sought is reasonable because it seeks the exact amount of a previously conferred benefit, and nothing more.  Plaintiff argues the clause does not allow it to recover any more than the cost of the concessions, which were provided as consideration for full and

prompt payment. It asserts that because defendants breached the Lease, they are obligated to make plaintiff whole.

Plaintiff attests the charge back provision is not a disguised penalty, and defendants are raising this argument for the first time on appeal. Even so, plaintiff insists it cannot be a disguised penalty, as it listed the specific amount of concessions and was set out in clear bolded language.

"Stipulated damages allow private parties to perform the judicial function of providing the remedy in breach of contract cases, namely, compensation of the nonbreaching party, and courts must ensure that the private remedy does not stray too far from the legal principle allowing compensatory damages." Wasserman's Inc. v. Twp. of Middletown, 137 N.J. 238, 250 (1994) (quoting Wassenaar v. Panos, 331 N.W.2d 357, 362 (Wis. 1983)). "Compensatory damages are designed to compensate a plaintiff for an actual injury or loss." Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 48 (1984). Conversely, "punitive damages are awarded as punishment or deterrence for particularly egregious conduct." Ibid.

"The validity of . . . 'stipulated damages clauses' has depended on a judicial assessment of the clauses as an unenforceable penalty or as an

12

enforceable provision for 'liquidated damage.'" Wasserman's Inc., 137 N.J. at 248.

> Liquidated damages is the sum a party to a contract agrees to pay if he breaks some promise, and which, having been arrived at by good faith effort to estimate in advance the actual damage that will probably ensue from the breach, is legally recoverable as agreed damages if the breach occurs. A penalty is the sum a party agrees to pay in the event of a breach, but which is fixed, not as a pre-estimate of probable actual damages, but as a punishment, the threat of which is designed to prevent the breach.
>
> Parties to a contract may not fix a penalty for its breach. The settled rule in this State is that such a contract is unlawful.
>
> [Westmount Country Club v. Kameny, 82 N.J. Super. 200, 205 (App. Div. 1964) (emphasis in original) (citations omitted).]

Our Supreme Court has explained the "common law distinction" between liquidated damages and penalties was set out in the first Restatement of Contracts[4] and adopted by this State in Westmount. Metlife Cap. Fin. Corp. v.

---

[4]

> An agreement, made in advance of breach, fixing the damages therefore, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless (a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is

13

Washington Ave. Assocs. L.P., 159 N.J. 484, 493 (1999). In Westmount, this court concluded a contract clause requiring someone to pay the remaining balance on their membership at a country club after opting out early was a penalty, as no evidence indicated the full contract price was a reasonable forecast of damages or that the damages from the harm was difficult to estimate accurately. 82 N.J. Super. at 207. The Second Restatement revised the liquidated damages provision, endorsing a "reasonableness" approach, Metlife Cap. Fin. Corp., 159 N.J. at 494, which states in relevant part:

> Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large, liquidated damages is unenforceable on grounds of public policy as a penalty.
>
> [Restatement (Second) of Contracts, § 356(1) & cmts. a. and b. (Am. L. Inst. 1981).]

Our Supreme Court expressly adopted the reasonableness approach in Wasserman's, deeming the Restatement one of the "most authoritative statements concerning liquidated damages." 137 N.J. at 252. "So viewed,

---

> one that is incapable or very difficult of accurate estimation.
>
> [Restatement of Conts., § 339 (Am. L. Inst. 1932).]

'reasonableness' emerge[d] as the standard for deciding the validity of stipulated damages clauses." Id. at 249. Thus, "[t]he overall single test of validity is whether the [stipulated damage] clause is reasonable under the totality of the circumstances." Metlife Cap. Fin. Corp., 159 N.J. 484 at 495 (alterations in original) (quoting Wassenaar, 331 N.W.2d at 361).

In addressing the Concession Rider, the trial court found the concession charge back provision was not a liquated damages clause, and even if it was,

> the [c]ourt [did] not find it unreasonable. While [defendants] argue[d] . . . the [charge back provision] [wa]s an unlawful penalty that clearly violate[d] the CFA, they d[id] not allege that [it] . . . violate[d] any specific provision of the CFA or any other New Jersey law. The sole allegation they ma[d]e [wa]s that under the restatement of contracts, the term fixing unreasonably large liquidated damages [wa]s unenforceable on grounds of public policy.

The court declined to find the charge back provision unenforceable in the absence of any "law or judicial precedent" deeming such provisions unlawful. Instead, the court found the charge back provision was

> reasonable because it only compensate[d] [plaintiff] for the benefit it conferred on defendant[]s . . . in exchange for their promise to make full and timely rent payments. . . . [T]he [charge back] provision d[id] not afford [plaintiff] any greater value than [their] approximate actual damages caused by the breach.

The [charge back] provision limit[ed] recovery to the rent and parking concessions [plaintiff] granted [defendants] in reliance on their written promises of full and prompt rent payments. Defendant[s] . . . were obligated to make [plaintiff] whole and return the benefit they already received because [defendants] did not timely pay rent. The five percent late charge compensate[d] [plaintiff] for the time value of money and damages for not receiving rent payment needed to pay its own expenses.

In contrast, the [charge back] provision provide[d] for recovery of the substantial rent concession[s] . . . defendant[s] . . . enjoyed . . . which was bargained for consideration for [defendants'] agreement to make all rent payments timely, which they failed to do.

Both [we]re reasonable damages that [plaintiff] [wa]s entitled to upon breach of the contract by . . . [defendants]. As such, to the extent the [charge back provision] [wa]s viewed as a liquidated damage clause, there's no basis to conclude that it's an unenforceable penalty because it allow[ed] [plaintiff] to contractually recover the full amount of a previously-conferred benefit.

The court proceeded to discuss defendants' CFA claims. The court found the concession charge back provision, and plaintiff's attempts to collect the concessions granted therein, were not abusive or unconscionable commercial practices under the CFA, noting such an argument "fails to recognize" plaintiff's "twice foregoing enforcement." The court also noted defendants failed "to identify any case law demonstrating that a contract including an alleged

16

unenforceable penalty constitute[d] consumer fraud or an unconscionable commercial practice," and defendants' allegations did not "demonstrate a lack of good faith, [honesty], or fail dealing" by plaintiff.

The court noted defendants

> could have rejected the lease and entered a one-year lease or denied the concessions and paid the regular rents for those months in accordance with the lease. Instead, they voluntarily availed themselves of the free rent option and by not holding up their end of the deal, they are obligated to return that benefit. There was nothing . . . improper about [the charge back] provision or [plaintiff]'s enforcement of [it] . . . . [Plaintiff] offered a substantial monetary benefit to [defendants], which they willingly accepted without coercion or deception.

> Defendant[s] . . . did not allege . . . they were duped or otherwise unaware of the [charge back] provision or that they did not understand the [clause]. The language [wa]s clear . . . and unambiguous. It was not buried in a long lease but, rather, set off as a separate clearly-identified rider that each tenant was required to review and sign in addition to the lease.

> They signed it two times without questioning it or complaining about it. Only after . . . defendant[s'] . . . third default did defendant[s] . . . claim . . . [the] provision was not enforceable because it's a penalty.

> Moreover, [defendants] did not allege any facts alleging dishonesty . . . or a lack of good faith and fair dealing concerning the [charge back] provision or its enforcement. They were not in any way misled . . . .

17

. . . With full knowledge that they would have to pay back the concessions in the event of the default, defendant[s] . . . accepted the concessions when the [Concession Rider] was executed, [and] utilized the concessions for the four-month period . . . .

We conclude the court did not err in its determination the concession charge back provision was not an unenforceable penalty. This was not a disguised, unenforceable penalty because the amount plaintiff sought to recover was tied to the precise amount of the previously conferred four-month rent concession. It did not exceed the cost of the rent concession and limited the recovery to the concessions plaintiff provided "as consideration" for defendants' agreement to lease the property and fulfill their obligations during the full term of the lease.

We have reviewed the out-of-state authority that has upheld similar provisions in the residential and commercial context. In Lesatz, the residential lease included a one-month free rent provision subject to the tenants' fulfilling their obligations under the lease. 416 N.W.2d at 335. The court found the provision was not a penalty as the plaintiffs "enjoyed the first month without having to pay rent," and had they fulfilled their lease, the rent would have been excused. Id. at 337. "It only became due when [the] plaintiffs breached the lease." Ibid.

18

In Manning, the court found a commercial lease provision—excusing the first nine months of rent which would "immediately become due" upon default—was not a penalty. 442 S.E.2d at 784-85. The court found the landlord was "not suing for <u>damages</u> it suffered as a result of . . . [a] breach; it is merely suing for unpaid rents that accrued <u>prior</u> to the breach, and that have become due . . . only as an agreed upon consequence of that breach." <u>Id.</u> at 785 (emphasis in original).

The court in <u>Frank</u> noted, in the context of a commercial lease, that a four-month rent abatement clause "neither attempted to estimate damages nor exact a penalty for breach. Rather, the clause simply rewards [the] [t]enant for prompt payment. We fail to see how this provision could be characterized as an unenforceable penalty clause under the circumstances." 4 S.W.3d at 606. The court observed:

> As noted by the <u>Manning</u> court, [the] [t]enant was placed in a better position by the provision's inclusion in the lease. Had this provision not been included, [the] [t]enant unquestionably would have been responsible for paying the final four months' rent. Essentially, by asking us to declare the provision an unenforceable penalty, [the] [t]enant now asks us to reward it for being in breach of the lease by allowing it retain the benefit of the provision despite the fact that it is no longer entitled to claim such benefit. We find [the] [t]enant's position in this regard to be patently unfair to [the] [l]andlord. The clause at issue was an agreed upon incentive for [the] [t]enant to promptly pay its rent and was not an attempt to exact a penalty.

19

A-1187-23

[Ibid.]

In another context, concerning a non-recourse carve-out provision in a mortgage note, we held it fixed liability rather than damages and was thus enforceable. CSFB, 410 N.J. Super. at 117. The note precluded the lender from seeking recovery against the borrower in the event of default; however, the note contained a carve-out clause providing the debt would be recoverable if the borrower did not get the lender's consent before "subordinate financing encumbering the property." Id. at 118. We held the provision was neither a liquidated damages provision nor a penalty, as it defined personal liability and did not "affix probable damages." Id. at 121. Rather, we found the provision provided for "actual damages" because it did not "estimate[] an amount otherwise difficult to compute," and only allowed "the lender to recover . . . damages actually sustained, namely the amount remaining on the loan at the time of breach." Id. at 122. We likewise determine the charge back provision here was not a penalty and that the provision addressed the actual damage as set forth in the Concession Rider, which the parties agreed was consideration for the lease.

The concession charge back provision was not a random penalty provision that imposed an unreasonable damage amount for a breach, but it was tethered

to the free rent provision in the contract entered into between the parties. The concession required defendants to pay plaintiff the amount they originally agreed to pay in the Lease that they would not owe if they complied with the conditions of the Lease Rider, thereby returning the parties to the position they would have been in had the rent concession not been agreed upon. This was not a disguised penalty, but a bargained for provision that provided defendants a significant monetary incentive—four months' free rent—which was part of the consideration for the Lease. Because we conclude the rent concession was not a disguised or unenforceable penalty, we need not address defendants' arguments the charge back provision ran afoul of the CFA.

To the extent we have not addressed any of defendants' other arguments, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

21