**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff– Appellee,**

v.

**PRINCE GEORGE CORPORATION, A South Carolina Corporation, Defendant–Appellant,**

and

Prince George Joint Venture, A Texas Joint Venture; First Stockton Partners, A Texas Joint Venture; Cove Partners B, Limited; First Stockton Service Corporation, Co–Partners of First Stockton Partners, A Texas Joint Venture; Lucille V. Pate, Defendants.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff– Appellee,**

v.

**PRINCE GEORGE CORPORATION, A South Carolina Corporation, Defendant–Appellant,**

and

Prince George Joint Venture, A Texas Joint Venture; First Stockton Partners, A Texas Joint Venture; Cove Partners B, Limited; First Stockton Service Corporation, Co–Partners of First Stockton Partners, A Texas Joint Venture; Lucille V. Pate, Defendants.

Nos. 94–2161, 94–2162.

United States Court of Appeals, Fourth Circuit.

Argued May 2, 1995.

Decided July 10, 1995.

---

**ARGUED:** Herbert William Hamilton, Kennedy, Covington, Lobdell & Hickman, Rock Hill, SC, for appellant. John Randolph Pelzer, Pelzer & Associates, P.A., Charles-

ton, SC, for appellee. **ON BRIEF:** Thomas E. McCutchen, Jr., William E. Hopkins, Jr., McCutchen, Blanton, Rhodes & Johnson, Columbia, SC, for appellant.

Before WILKINSON and HAMILTON, Circuit Judges, and LIVELY, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

Affirmed in part, reversed in part, and remanded by published opinion. Senior Circuit Judge LIVELY wrote the opinion, in which Judge WILKINSON and Judge HAMILTON joined.

## OPINION

LIVELY, Senior Circuit Judge:

This case concerns the right to a deficiency judgment of the holder of a promissory note secured by a real estate mortgage following foreclosure of the mortgage and sale of the collateral for less than the outstanding amount of the debt. The issues on appeal require this court to interpret terms of the promissory note defining the lender's limited right to a deficiency judgment. Both parties have appealed the district court's judgment. We now affirm the judgment on issues raised by the defendant's direct appeal, vacate the judgment on the issue raised by the plaintiff's cross-appeal, and remand for further proceedings as hereinafter described.

### I.

#### A.

In 1985 the defendant-appellant, Prince George Corporation (PGC), and First Stockton Partners formed a joint partnership, Prince George Joint Venture (PGJV), for the purpose of developing real estate in coastal South Carolina. On November 15, 1985, PGJV executed a $17.5 million promissory note in favor of Sunbelt Savings Association (Sunbelt), to finance the development of a resort community called Arcadia II. The note was secured by a mortgage on the real estate to be developed.

The note contained the following language, limiting the liability of PGC for a deficiency judgment upon foreclosure:

If there is a foreclosure ... no judgment for any deficiency ... shall be sought or obtained by Holder against Prince George. Notwithstanding the foregoing provisions of this paragraph ... no limitation of liability or recourse provided above in this paragraph shall (a) apply to the extent that Holder's rights of recourse to the property which is then subject to the Mortgage are suspended, reduced or impaired by or as a result of any act, omission or misrepresentation of Prince George or any other party now or hereafter liable for any part of the loan evidenced by this Note and accrued interest thereon, or by or as a result of any case, action, suit or proceeding to which Prince George or any such other party voluntarily becomes a party....

PGJV defaulted on the loan in July 1988. After Sunbelt became insolvent, the Federal Deposit Insurance Corporation (FDIC), eventually became the holder of the note in its corporate capacity.

PGJV and PGC made several offers to settle the debt, but the parties could not reach an agreement. In June 1990, PGJV and PGC filed suit against FDIC in Texas, where the loan originated, seeking to enjoin FDIC from foreclosing on the property. In February 1992, the United States District Court for the Northern District of Texas issued an order granting FDIC's motion for summary judgment on the note and on all claims made by PGJV and PGC against FDIC. Meanwhile, FDIC initiated the present foreclosure proceedings on March 29, 1991, in South Carolina. In response, PGC took the following actions: filed a motion to stay the foreclosure sale on May 8, 1991; filed a motion to amend its answer on September 20, 1991; filed a motion for permission to file a third party complaint on November 1, 1991; filed an amended answer on December 4, 1991; and finally opposed FDIC's motion for summary judgment.

On March 10, 1992, the South Carolina District Court granted summary judgment to FDIC and entered a decree of foreclosure based on the *res judicata* effect of the Texas District Court order granting summary judgment. A final judgment was entered in favor

of the remaining defendants in the Texas case in July 1992, and PGJV and PGC continued to resist the foreclosure by appealing the South Carolina judgment. This court, in an unpublished opinion, affirmed the decision of the district court ordering summary judgment for FDIC on the grounds of mootness and *res judicata.*

On August 24, 1992, four days before the scheduled foreclosure sale, PGC filed an involuntary bankruptcy petition against PGJV. This filing automatically stayed the sale. The bankruptcy court lifted the stay on September 17, 1992, and subsequently dismissed the bankruptcy petition. When PGC failed to file a bond to obtain a stay, the sale took place on October 26, 1992, with the bidding remaining open until November 25, 1992. FDIC made the high bid at $12,029,374.

### B.

FDIC filed a motion for a deficiency judgment against PGC on December 30, 1993, claiming that PGC's acts in 1) filing the bankruptcy petition, and 2) resisting FDIC's foreclosure action triggered the recourse provisions in the note. The district court determined that the filing of the petition in bankruptcy by PGC was an "act" described in the note that triggered its recourse provisions.

After an evidentiary hearing on June 16, 1994, the district court concluded that the bankruptcy filing suspended FDIC's rights of recourse to the property for sixty-three days (August 24 through October 25, 1992). However, for "policy reasons," the court held that PGC's actions in procedurally resisting the foreclosure proceedings in mid–1991 were not triggering "acts" under the terms of the note.

On August 3, 1994, the district court entered a deficiency judgment in favor of FDIC against PGC in the amount of $505,927. The court calculated the deficiency ($332,260) based on the accrual of interest on the full indebtedness during the sixty-three day delay caused by the bankruptcy filing, using the interest rate prescribed by the note. The damages awarded by the court also included $4,810 in taxes and $168,856 in costs

and attorney's fees. In addition, the court awarded prejudgment interest on $337,070 (deficiency plus taxes) at the applicable market rate from November 25, 1992, to the date of the order, and post-judgment interest at the legal rate.

PGC argues on appeal that the bankruptcy filing did not entitle FDIC to a deficiency judgment and that the court incorrectly calculated the extent to which any of its actions impaired FDIC's recourse to the property. FDIC's cross-appeal challenges the district court's ruling that PGC's resistance of the foreclosure proceedings in South Carolina did not activate the deficiency provisions of the note.

### II.

Under the terms of the note, FDIC is entitled to a deficiency judgment against PGC only in two circumstances: 1) if PGC "voluntarily" becomes part of a "case, action, suit or proceeding" which suspends, reduces or impairs FDIC's recourse rights to the collateral; or 2) if PGC engages in "any act, omission or misrepresentation" that has the same effect. This court must apply fundamental contract interpretation principles to determine whether PGC's filing of the bankruptcy petition against PGJV and its resistance to foreclosure proceedings fell within the reach of these provisions.

The note shows on its face that it was executed in Dallas, Texas, and provides it shall be construed in accordance with Texas law. The mortgage provides that it shall be construed in accordance with South Carolina law. The parties have cited case law from both jurisdictions, and there appears to be no difference in the law of the two states as related to the issues before us. Suits to which FDIC is a party are deemed to arise under federal law. 12 U.S.C. § 1819(a) & (b)(2)(A) (1988). In the absence of a showing that state law conflicts with federal common law, a court may adopt state law in interpreting an agreement affecting FDIC's rights. *FDIC v. New Hampshire Ins. Co.,* 953 F.2d 478, 481 (9th Cir.1991). No such showing having been made, we will also rely on Texas and South Carolina statutory and case law.

## A.

PGC contends that the language of the note does not entitle FDIC to a deficiency judgment based on PGC's filing the bankruptcy petition. We disagree. In interpreting a contract, the court must first resort to the contract language to determine the intention of the parties. *Holden v. Alice Mfg., Inc.,* — S.C. —, 452 S.E.2d 628, 631 (Ct. App.1994); *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994); *Unocal Corp. v. Dickinson Resources, Inc.,* 889 S.W.2d 604, 608–09 (Tex.Ct.App.1994). If the language is plain and capable of legal construction, the language alone must determine the agreement's force and effect. *Ellis v. Taylor,* — S.C. —, 449 S.E.2d 487, 488 (1994); *Jordan v. Security Group, Inc.,* 311 S.C. 227, 428 S.E.2d 705, 707 (1993).

Here, the holder's right to a deficiency judgment depends on acts by the borrower that are clearly set forth in the note. Under the clear terms of the note, PGC is not entitled to escape liability for a deficiency judgment if it "voluntarily" becomes part of a case, action, suit or proceeding which suspends, reduces or impairs FDIC's rights of recourse to the property. Certainly PGC's filing of the bankruptcy petition against PGJV was "voluntary." The bankruptcy proceeding also qualifies as a "case, action, suit or proceeding" within the plain language of the note.

Finally, the bankruptcy filing did impair FDIC's right of recourse to the property. The automatic stay accompanying the bankruptcy filing prevented the original foreclosure sale from occurring as scheduled on August 28, 1992. The foreclosure sale was not held until October 26, 1992, and the bidding remained open until November 25, 1992. As the district court calculated, the filing suspended FDIC's recourse rights for sixty-three days (August 24 through October 25, 1992).

There is no ambiguity, and thus, the meaning of the language in the note presented a question of law to the district court. *Holden,* 452 S.E.2d at 631. When construing a contract, the court's duty is to enforce the agreement of the parties, giving the language its usual meaning. "[W]here one construction makes the provisions unusual or extraordinary and another construction which is equally consistent with the language employed, would make it reasonable, fair and just, the latter construction must prevail." *Parker v. Byrd,* 309 S.C. 189, 420 S.E.2d 850, 853 (1992) (quoting *C.A.N. Enterprises, Inc. v. S.C. Health and Human Services Finance Comm'n,* 296 S.C. 373, 373 S.E.2d 584, 586 (1988)).

A mortgage represents security for a loan, not full payment. In taking a mortgage a lender does not agree, absent a waiver of its right to a deficiency, to look only to the property for satisfaction of the debt. If a foreclosure fails to bring enough to pay the debt in full, the lender is entitled to bring an action for a deficiency judgment as a matter of course. *Perpetual Bldg. & Loan Ass'n of Anderson v. Braun,* 270 S.C. 338, 242 S.E.2d 407, 408 (1978). This being so, PGC's interpretation of the language in the note as not providing a right to a deficiency judgment based on PGC's acts that suspended FDIC's right to resort to the collateral is unusual and extraordinary. The district court and FDIC's construction is "equally consistent with the language employed" and makes the entire note, insofar as it relates to a deficiency judgment "reasonable, fair and just." *Parker,* 420 S.E.2d at 853.

## B.

PGC also maintains that it had a statutory right to resort to the bankruptcy court, and that any waiver of that right was void as against public policy.

This argument ignores the fact that the note did not prohibit PGC from resorting to bankruptcy; it merely provided that if PGC took certain actions it would forfeit its exemption from liability for any deficiency. The Supreme Court discussed judicial reliance on public policy as grounds for not enforcing contract provisions in *Twin City Pipe Line Co. v. Harding Glass Co.,* 283 U.S. 353, 356–57, 51 S.Ct. 476, 477–78, 75 L.Ed. 1112 (1931), stating:

The principle that contracts in contravention of public policy are not enforceable should be applied with caution and only in cases plainly within the reasons on which that doctrine rests. It is only because of the dominant public interest that one who ... has had the benefit of performance by the other party will be permitted to avoid his own promise.

PGC clearly benefitted from the lender's performance; it obtained a loan for one hundred percent of the capital originally required to finance the project. One of the promises PGC gave in return was that its exemption from liability for any deficiency in the event of foreclosure would be removed to a limited extent if it voluntarily took steps that suspended, reduced or impaired the lender's rights of recourse to the collateral for the loan.

PGC relies on *SCN Mortgage Corp. v. White*, —— S.C. ——, 440 S.E.2d 868 (1994). That case is readily distinguishable. In *SCN*, a provision of the mortgage was found to waive the borrower's right to an appraisal upon foreclosure. A statute gave debtors the right, upon foreclosure, to petition the court for an order of appraisal. This provision was an integral part of the very statute under which a foreclosure decree could be obtained, and was included for the specific purpose of protecting borrowers. The Supreme Court of South Carolina held it was against public policy to require a waiver of this right in advance.

The provision at issue in the present case does not attempt to alter the state's statutory scheme relating to foreclosure. It does not contravene any public policy established by the legislature or enumerated by the courts of South Carolina. Our decision on the public policy issue follows the court's holding in *Warren v. Pilgrim Health & Life Ins. Co.*, 217 S.C. 453, 60 S.E.2d 891 (1950). Quoting its earlier decision in *Crosswell v. Conn. Indem. Ass'n*, 51 S.C. 103, 28 S.E. 200 (1897), the *Warren* court stated:

A sound public policy requires the enforcement of contracts deliberately made, which do not clearly contravene some positive law or rule of public morals.... Courts should not annul contracts on doubtful grounds of public policy. In such matters it is better that the legislature should first speak.

*Warren*, 60 S.E.2d at 893. The district court found no public policy issue related to its conclusion that PGC's resort to bankruptcy was an act that suspended FDIC's right of recourse, and we agree.

### III.

On cross-appeal, FDIC asserts that the district court erred in denying recovery to FDIC for losses resulting from PGC's resistance to the foreclosure proceedings (as distinguished from the bankruptcy filings).

### A.

The district court denied FDIC's request for a deficiency judgment based on the delay caused by PGC's resistance to foreclosure. The court reasoned as follows:

The drafter of the Note (the lender) was under no duty to list every deed that would trigger a deficiency. Indeed, the Note does not specify that PGC will be liable for a deficiency judgment in the event PGC enters a defense to a foreclosure action. The lender was within its rights to draft the Note in general terms, proscribing "acts, omissions, and misrepresentations." But in choosing to do so, the lender took the risk that some unspecified act might create confusion, lead to litigation, and be resolved against the drafter.

(JA 421).

\* \* \*

Had the lender intended to use the threat of a deficiency judgment as an incentive to induce PGC to give up its right to defend against foreclosure, such an extreme position should have been more clearly stated. The United States Supreme Court has held in other circumstances that contractual waiver of important rights must "at the very least be clear." *Fuentes v. Shevin*, 407 U.S. 67, 95 [92 S.Ct. 1983, 2001–02, 32 L.Ed.2d 556] (1972). A term in a promissory note that forbids the mounting of a legal defense in the event of a dispute would be rather drastic, and this court chooses not to con-

strue a general proscription against "acts, omissions, and misrepresentations" as encompassing a prohibition against asserting a legal defense.

(JA 421–22).

Finding the language of the note ambiguous, the district court stated that PGC's defense against foreclosure "was not an act triggering the right to a deficiency judgment for FDIC." (JA 423).

### B.

We cannot agree with the district court that the language in question is ambiguous. The note subjects PGC to a limited deficiency judgment for taking "any act" that impairs FDIC's recourse rights. The phrase "any act, omission or misrepresentation" is not as broad as it might appear at first glance. The phrase is qualified substantially by other conditions in the note. Not just any act triggers the deficiency provisions of the note. Only acts that impair or suspend FDIC's ability to reach the collateral constitute "acts" under the terms of the note. PGC's resistance to the foreclosure proceedings clearly impaired FDIC's recourse rights within the meaning of the note. The challenged phrase is neither overly broad nor susceptible to more than one interpretation. Because the note was not ambiguous, it was error for the district court to apply the rule of construction that ambiguous documents must be construed against the drafter.

Broad language in an agreement does not render the document ambiguous. See generally *Tubb v. Bartlett*, 862 S.W.2d 740 (Tex.Ct.App.1993). In *Tubb,* one party agreed to indemnify the other for "all debts and obligations, claims and demands." *Id.* at 750. Although the court noted that this was "broad language," it concluded that under the plain meaning of the agreement, the indemnitor agreed to indemnify the other party for both liability and damages.

The subject matter and purpose of the entire agreement must be considered in ascertaining the intent of the parties and the meaning of the terms used. *Thomas-McCain, Inc. v. Siter,* 268 S.C. 193, 232 S.E.2d 728, 729–30 (1977); *Forbau v. Aetna*

*Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994). When these factors are considered in the present case, it becomes clear that PGC's actions in resisting foreclosure constituted "acts" under the note, entitling FDIC to a deficiency judgment.

The paragraph containing the phrase at issue deals only with the rights and obligations of the parties in the event of foreclosure. It first protects PGC from liability for deficiency in the event of foreclosure. The note next provides that if PGC takes "any act, omission or misrepresentation" to hinder FDIC's recourse rights, the absolute protection against a deficiency is lost, and PGC becomes liable for a limited deficiency. Surely the "acts" subjecting PGC to limited liability included acts impairing FDIC's recourse through foreclosure since that is the main subject of the paragraph. It was not unreasonable for the original holder to want unimpeded recourse to the collateral in the event of default on the note. This is especially true given the substantial amount of the loan and the fact that PGC had no equity in the property.

When land is used as collateral for a debt, as in this case, the lender's statutorily granted right of recourse to the property is through judicial foreclosure. See generally S.C.Code Ann. §§ 29–3–610 to 29–3–790; *Perpetual Bldg. & Loan Ass'n of Anderson v. Braun,* 270 S.C. 338, 242 S.E.2d 407, 408–09 (1978). Thus, it is reasonable to conclude that the parties intended that any actions taken by PGC that impeded FDIC's efforts to secure foreclosure should be treated as triggering acts. Under the terms of the note, PGC could take any legal action that it considered prudent; nothing was prohibited. It resisted foreclosure, however, at the financial risk of incurring a limited deficiency judgment to the extent PGC's actions suspended FDIC's right of recourse to the property if its actions were unsuccessful. It must be remembered, moreover, that PGC continued to resist foreclosure in the face of the Texas court's order granting summary judgment to FDIC and this court's affirmance of the South Carolina District Court's holding that the Texas judgment was *res judicata* as to the issue of PGC's default.

The district court referred, without explanation, to "policy reasons" in denying FDIC's claim. (JA 421). The court cited *Fuentes v. Shevin*, 407 U.S. 67, 95, 92 S.Ct. 1983, 2001–02, 32 L.Ed.2d 556 (1972), for the proposition that "contractual waiver[s] of important rights must 'at the very least be clear.'" (JA 422). We think *Fuentes* is distinguishable and inapposite to the present case. *Fuentes* addressed the waiver of a constitutional right to notice and a hearing prior to a seizure of collateral. FDIC is not relying on a waiver of any constitutional or statutory right, but is seeking only to enforce the agreement of the parties that if PGC impairs FDIC's recourse rights, FDIC is entitled to a partial deficiency judgment. PGC had a full hearing on the defenses it raised to the foreclosure action; PGC did not waive any fundamental right in agreeing to the deficiency provisions.

We reverse the judgment of the district court to the extent it denied FDIC a deficiency judgment on the basis of PGC's resistance to foreclosure. Upon remand the district court must determine how long FDIC's recourse rights were impaired due to this resistance. After determining the length of delay, the court must calculate the damages incurred during that time.

### IV.

Finally, PGC attempts to avoid liability by arguing that the real cause of any damages or delay experienced by FDIC was FDIC's refusal to accept PGC's settlement offers prior to the foreclosure sale. PGC cites no authority for its claim that FDIC's failure to accept these offers bars recovery of a deficiency judgment.

The promissory note does not require the holder to accept a settlement offer prior to foreclosure once the maker is in default. Rather, it states that the maker of the note shall be liable for payment and for full performance of all its obligations, covenants and agreements under the mortgage to the full extent of its interest in the property that constitutes security for payment of the note. According to the plain language of the mortgage, referred to in the note, upon any default by the borrower, the lender was entitled to declare the entire unpaid balance of the debt at once due and payable and to proceed to enforce its rights in a foreclosure action. (JA 49). Once default occurred, FDIC had an absolute right to seek payment first from foreclosure and sale of the property securing the loan. That was the agreement of the parties, and the borrower in default had no right to require the lender to secure payment in any other fashion.

Moreover, FDIC acted quite reasonably in rejecting PGC's offer. PGC did not make an offer to pay the debt immediately, although the acceleration provision made it at once due and payable upon default. Rather, in April 1991, PGC made an offer to pay FDIC $125,000 as earnest money and $17,500,000 in nine months, secured by a deed in lieu of foreclosure or consent to foreclose at the FDIC's option. PGC claims that had it not been for FDIC's incorrect valuations of the property and its refusal to negotiate, there would have been no deficiency.

Under the April 1991 offer, PGC, for a relatively small amount of earnest money ($125,000) would have continued to control the property for nine months. In view of the declining real estate market at the time, as disclosed by the record, it is very unlikely that any lender would have been willing to lend PGC $17.5 million to fund the settlement. Given PGC's track record, it is also unreasonable to speculate that FDIC could have had full recourse to the property at the end of the nine month period in the event PGC did not obtain financing. PGC could have contested the deed in lieu of foreclosure or filed for bankruptcy at that time.

PGC also argues that filing for bankruptcy did not impair, reduce or suspend FDIC's recourse to its collateral. This argument is based on another of PGC's offers of settlement. According to PGC, because it made a "final offer" before the bankruptcy proceedings were dismissed to pay FDIC $11,250,000 plus attorney fees within 120 days if no agreement could be reached for "a consensual development plan which would result in payment *in full* to the FDIC over a period of time," FDIC was not prejudiced by the bankruptcy proceedings. Because the offer was

greater than either of two current appraisals of the property, PGC argues that the "slight delay" in the sale of the property caused by the bankruptcy activity "could not have impacted the FDIC's right of recourse to any recognizable extent." We reject this argument for the same reasons set forth in response to PGC's first settlement argument.

■ A court must enforce a contract as agreed between the parties and not make a new contract for them. *Jordan v. Security Group, Inc.*, 311 S.C. 227, 428 S.E.2d 705, 707 (1993). The note and mortgage imposed no duty on the lender to accept a settlement in lieu of foreclosure and we will not create such a duty.

### V.

The damages calculated by the district court only included those resulting from PGC's filing of the bankruptcy petition. As we have indicated, on remand the district court must calculate the additional damages resulting from PGC's resistance to foreclosure.

■ Under the note, PGC is liable for a deficiency judgment "to the extent" its actions impair or suspend FDIC's recourse rights. The district court interpreted this language to mean "during the time" FDIC's recourse rights were impaired. Under this interpretation PGC is not liable for the balance due on the note after foreclosure, only for any loss caused directly by its "acts." We agree with the district court's interpretation of this phrase.

■ The district court calculated the damages by applying the per diem accrual of interest at the rate prescribed in the note to the entire balance on the note during the delay. This is the correct measure of damages since it is the method agreed upon by the original parties to the note. Parties may contractually agree to a measure of damages in the event of breach or default on a contract. See *City of New Orleans v. Warner*, 175 U.S. 120, 147, 20 S.Ct. 44, 55, 44 L.Ed. 96 (1899); *Brewster v. Wakefield*, 63 U.S. 118, 120, 16 L.Ed. 301 (1859). Further, interest on the debt at the agreed note rate is the usual measure of damages to reimburse a party for the lost value of money during the time the debt is owed. *Brewster*, 63 U.S. at 119–20.

The district court calculated the per diem interest on the debt at $5,273.97 ($17,500,000 × 11%, divided by 365 days), as provided by the terms of the note. PGC does not quarrel with the interest rate used by the court (11%), but argues that the district court should not have used a per diem rate based on the full amount of the indebtedness. Instead, PGC argues, "[t]his amount should be calculated by determining the daily interest which would have been earned on the amount actually received for the property, for the number of days by which the receipt of funds was delayed." (Reply Brief at 14). We find no support for this position in the language of the note or any other document in the record. The note was a promise to pay the full amount of the loan, not the amount brought at foreclosure or any other lesser amount. The parties agreed in advance on a specific measure of liability by providing for interest at a prescribed rate. Using this rate, the district court calculated the per diem amount and applied it to the length of delay in obtaining foreclosure resulting from PGC's resort to bankruptcy. We agree with this method of calculating PGC's limited liability for the deficiency.

The district court correctly concluded that PGC's filing in bankruptcy delayed recourse to the collateral for 63 days, and awarded damages of $332,260. Upon remand, after determining the length of delay properly attributable to PGC's resistance to foreclosure, the district court will apply the same daily rate utilized in its original opinion to calculate the additional award to which FDIC is entitled.

The judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings as outlined herein.

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.*