# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Bank of America, N.A. v. Freed, 2012 IL App (1st) 110749**

---

| | |
|---|---|
| Appellate Court Caption | BANK OF AMERICA, N.A., a National Banking Association, Successor by Merger to LaSalle Bank National Association, as Agent for Lenders, Plaintiff-Appellee, v. LAURANCE H. FREED and DDL LLC, an Illinois Limited Liability Company, Defendants-Appellants. |
| District & No. | First District, Second Division<br>Docket Nos. 1-11-0749, 1-11-2112, 1-11-3372 cons. |
| Filed | December 28, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action to foreclose a loan defendants guaranteed, the trial court properly entered a judgment pursuant to a "carve-out" provision of the guaranty requiring them to pay the full amount due if they took "any action" with respect to the appointment of a receiver or the foreclosure, and the denial of defendants' motion for substitution of judge as of right in the subsequent citation to discover assets proceeding was upheld. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-39930; the Hon. Margaret Brennan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Bernstein Law Firm, of Chicago (Louis D. Bernstein, Michael T. Herbst, Tracey M. Guerin, and James D. Trail, of counsel), and Day & Robert, P.C., of Naperville (Scott M. Day, of counsel), for appellants.

Seyfarth Shaw LLP, of Chicago (John H. Anderson and Jerome F. Buch, of counsel), for appellee.

Panel

JUSTICE QUINN delivered the judgment of the court, with opinion.

Presiding Justice Harris and Justice Connors concurred in the judgment and opinion.

**OPINION**

¶ 1    This consolidated appeal arises out of an action by plaintiff, Bank of America, N.A., to foreclose a $205 million loan guaranteed by defendants, Laurance H. Freed and DDL LLC. On appeal, defendants argue that the trial court erred by: (1) entering a judgment against them in the amount of $206,700,222.39, pursuant to a "carve-out" provision of the guaranty that required them to pay the full amount due, plus costs and interest, if they took "any action" in connection with the appointment of a receiver or the foreclosure of the lien; (2) denying their motion for a substitution of judge as of right in the citation to discover assets proceeding that was commenced after the foreclosure judgment was entered; and (3) entering charging orders against 72 limited liability companies and limited partnerships in which defendants have an interest, where those entities were not made parties to the action. For the reasons set forth below, we affirm the trial court.

¶ 2                              I. BACKGROUND

¶ 3    This case, which has been before this court on two previous occasions, arises out of the foreclosure of a mortgage on property located at 108 North State Street in Chicago, Illinois, commonly referred to as "Block 37." The Block 37 project has a long history[1] but only a brief summary of recent events is needed to address the issues raised in this appeal. Block 37 was vacant for more than a decade when, in 2005, the City of Chicago (City) sold it to Mills Corporation (Mills), a Virginia-based real estate investment company. Pursuant to an agreement between Mills and the City, the property was to be developed into a shopping, dining, and entertainment destination, and a new subway station was to be built underneath.

---

[1]Many articles and at least one book (see Ross Miller's *Here's The Deal: The Buying and Selling of a Great American City* (1996)), have been written about the development of Block 37, which stretches back as far as the 1960s.

Mills ran into financial problems and in 2007 sold the property to Joseph Freed and Associates, LLC (JFA), a Chicago-based real estate developer. On or about March 22, 2007, JFA entered into a construction loan agreement with LaSalle Bank, N.A.[2] (Bank), with a maximum principal amount of $205 million. JFA's president, Laurance H. Freed, and JFA's parent company, DDL LLC, guaranteed the loan. Sections 1(a) and (b) of the guaranty placed a $50,325,000 limitation on the guarantors' liability, subject to section 1(c) of the guaranty. Section 1(c) contained four "carve-outs" to the liability limitation of the guaranty, one of which provided that the guaranty would become a full repayment guaranty if "the Borrowers contest, delay or otherwise hinder any action taken by the Agent or the Lenders in connection with the appointment of a receiver for the Premises or the foreclosure of the liens, mortgages or other security interests created by any of the Loan Documents."

¶ 4 The loan agreement required that the loan be "in balance" at all times, meaning that the amount of funds available under the loan had to equal or exceed the amount budgeted to complete the project. The loan was out of balance almost immediately after JFA acquired the property, and JFA and the Bank tried but were unable to agree to a loan modification. Instead, the parties entered into a series of separate letter agreements between March 2008 and August 2009, whereby the Bank continued to disburse funds despite the default. However, in October 2009, after the Bank and JFA could not agree on a plan to add a movie theater to the mall, which would have required additional funding, the Bank filed a two-count mortgage foreclosure complaint in the circuit court of Cook County. Count I sought to foreclose on the mortgage on Block 37; count II was against defendants as guarantors of the mortgage.[3] Count II originally sought judgment on the guaranty for the limited principal amount of $50,325,000. However, on December 23, 2009, the Bank filed an amended count II, seeking the full amount of the loan from Freed and DDL, $144,263,189.76, plus interest, costs, and attorney fees. In its amended count II, the Bank asserted that because defendants had contested the foreclosure and the appointment of a receiver, they were liable for the full amount of the loan pursuant to section 1(c)'s carve-out provision. Defendants filed a motion to dismiss amended count II, arguing that section 1(c) of the guaranty was an unenforceable penalty. The trial court denied that motion.

¶ 5 On September 8, 2010, the Bank filed a motion for summary judgment, which the trial court granted. Then on December 22, 2010, the trial court entered judgment against defendants in the amount of $206,700,222.39, pursuant to their guaranty of the loan.[4] The order contained a finding under Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), that

---

[2]Plaintiff, Bank of America, N.A., is the successor trustee by virtue of the October 2008 merger with LaSalle Bank, N.A.

[3]The Bank also filed an emergency petition for the appointment of a receiver, which the trial court granted. Defendants filed an interlocutory appeal pursuant to Illinois Supreme Court Rule 307 (eff. Feb. 26, 2010), and this court affirmed the trial court (*Bank of America, N.A. v. 108 N. State Retail, LLC*, 401 Ill. App. 3d 158 (2010), *appeal denied*, 237 Ill. 2d 552 (2010)).

[4]A foreclosure sale reduced the judgment to $110,956,772.20.

there was no just reason to delay enforcement or appeal of the judgment. On January 21, 2011, defendants filed a motion to reconsider the Rule 304(a) certification, which the trial court denied on February 8, 2011. On March 9, 2011, defendants filed a notice of appeal of the November 19, 2010, order granting summary judgment and the December 22, 2011, judgment against them.

¶ 6 In the meantime, on January 3, 2011, the Bank served citations to discover assets on Freed and DDL. On January 13, 2011, defendants' new attorneys filed an appearance in the case, and on January 20, 2011, they filed a motion for substitution of judge as of right pursuant to section 2-1001(a) of the Code of Civil Procedure (735 ILCS 5/2-1001(a)(2) (West 2008)) (Code), asserting that service of the citations to discover assets commenced a new supplementary proceeding under section 2-1402(a) of the Code (735 ILCS 5/2-1402(a) (West 2008)), entitling them to substitution of judge before a trial or hearing has begun or the presiding judge has ruled on any substantial issue. Judge Brennan, who had presided over the mortgage foreclosure action, denied the motion for substitution, stating in part, as follows:

"I would take this proceeding as much more similar to a 2-1401 petition, where, yes, you do have certain provisions of the Code of Civil Procedure that apply, certainly service of summons and service of the citation, things of that nature. But not so much that it removes it to be an entirely kind of start-over. It's a continuing of the same proceeding, just as to enforcement of the judgment terms. *** We have had your clients in this case since its inception and, therefore, your motion for substitution of judge as of right is denied."

¶ 7 On May 24, 2011, pursuant to section 30-20(a) of the Illinois Limited Liability Company Act (805 ILCS 180/30-20(a) (West 2008)) and section 2-1402 of the Code (735 ILCS 5/2-1402 (West 2008)), the Bank filed a motion for charging orders on the distributional interests of Freed and DDL in certain limited liability companies. The motion asked the court to order defendants to cause any distributions from those companies to be paid to the Bank and to bar defendants from transferring, disposing, or impairing any of JFA's assets. Shortly thereafter, on June 9, 2011, the Bank filed a motion for rule to show cause why Freed and DDL should not be held in contempt for dissipating almost $5 million in assets in violation of those citations. After an evidentiary hearing, the trial court entered an order on October 5, 2011, finding defendants in contempt and appointing a receiver. Defendants appealed, and this court affirmed but remanded to the trial court with orders to enter a proper purge provision. *Bank of America, N.A. v. Freed*, 2012 IL App (1st) 113178 (referred to below as the "second appeal").

¶ 8 On June 22, 2011, the trial court imposed charging orders on defendants' distributional interests in 46 limited liability companies. On July 21, 2011, defendants filed a notice of appeal of that order, as well as the order denying their motion for substitution of judge. On October 24, 2011, the trial court imposed charging orders on 26 additional limited liability companies (LLCs) and limited partnerships in which defendants have an interest, ordered the foreclosure of all of the charging orders, and appointed a receiver for all of the interests, pursuant to section 30-20 of the Limited Liability Company Act (805 ILCS 180/30-20 (West 2008)). On November 23, 2011, defendants filed a notice of appeal of the October 24, 2011,

order imposing additional charging orders, as well as the January 22, 2011, order denying their motion for substitution of judge. The following orders were consolidated in this appeal: (1) the November 19, 2010, order granting the Bank's motion for summary judgment and the December 22, 2010, judgment in the Bank's favor in the amount of $206,700,222.39; (2) the trial court's January 21, 2011, order denying defendants' motion for substitution of judge in the citation to discover assets proceeding; and (3) the June 22, 2011, and October 24, 2011, orders imposing charging orders and foreclosing upon distributional and transferable interests in 72 limited liability companies and limited partnerships in which Freed and DDL have an interest.

¶ 9                                    II. ANALYSIS

¶ 10                               A. Standard of Review

¶ 11      The trial court's grant of summary judgment in favor of the Bank and its judgment against defendants for the full amount of the indebtedness under section 1(c) of the guaranty are reviewed *de novo*. *Chicago Title & Trust Co. v. Telco Capital Corp.*, 292 Ill. App. 3d 553, 554 (1997). *De novo* review is also the appropriate standard of review for the trial court's determination that charging orders should be entered against the 72 limited liability companies and limited partnerships in which defendants have an interest (*Alderson v. Southern Co.*, 321 Ill. App. 3d 832, 846 (2001)), and its denial of defendants' motion for substitution of judge (*Powell v. Dean Foods Co.*, 405 Ill. App. 3d 354, 359 (2010)).

¶ 12                          B. Motion for Substitution of Judge

¶ 13      On appeal, defendants first argue that the trial court erred in refusing to grant their motion for substitution of judge as of right pursuant to section 2-1001(a)(2)(i) of the Code (735 ILCS 5/2-1001(a)(2)(i) (West 2008)), which they filed on January 13, 2011, shortly after the Bank served them with citations to discover assets. Section 2-1001(a)(i) provides that "[e]ach party shall be entitled to one substitution of judge without cause as a matter of right." 735 ILCS 5/2-1001(a)(2)(i) (West 2008). An application for substitution of judge as of right must be made by motion and "shall be granted if it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case, or if it is presented by consent of the parties." 735 ILCS 5/2-1001(a)(2)(ii) (West 2008). Defendants assert that the service of the citations to discover assets commenced a new supplementary proceeding under section 2-1402(a) of the Code (735 ILCS 5/2-1402(a) (West 2008)), entitling them to substitution of judge as of right before a trial or hearing has begun or the presiding judge has ruled on any substantial issue. 735 ILCS 5/2-1001(a)(2)(ii) (West 2008).

¶ 14      Before addressing the substance of defendants' claim, we must first determine whether, as the Bank asserts, defendants have forfeited this issue by failing to raise it in their second appeal before this court. In that appeal, which was heard approximately nine months before the present appeal, this court affirmed the trial court's finding of contempt against defendants for dissipating assets in violation of the citations to discover assets and its appointment of a receiver. The Bank asserts that the second appeal was an interlocutory appeal pursuant to

Illinois Supreme Court Rules 304(b)(5) and 307(a)(2) (eff. Feb. 26, 2010) and that Illinois law requires that all issues that could have been raised in such an appeal must be raised or they are forfeited. For support, the Bank relies on *Sarah Bush Lincoln Health Center v. Berlin*, 268 Ill. App. 3d 184 (1994), wherein the appellate court found that in an interlocutory appeal under Rule 307(a)(1), it could consider the question of whether the trial court erred in denying a defendant's motion for substitution of judge. The court acknowledged that up to that point courts that had addressed the question had held that the substitution of judge issue is not reached in an interlocutory appeal because " '[a]n appeal under Rule 307 does not open the door to a general review of all orders entered by the trial court up to the date of the order that is appealed.' " *Murges v. Bowman*, 254 Ill. App. 3d 1071, 1080 (1993) (quoting *Panduit Corp. v. All States Plastic Manufacturing Co.*, 84 Ill. App. 3d 1144, 1151 (1980)). See also *City of Chicago v. Airline Canteen Service, Inc.*, 64 Ill. App. 3d 417, 428 (1978) (holding that a Rule 307 appeal "does not open the door to a general review of all orders entered by the trial court up to that date"). The court in *Sarah Bush Lincoln*, however, found that a motion for substitution of judge is different from other orders, because it bears "directly upon the question of whether the order on appeal was proper." *Sarah Bush Lincoln*, 268 Ill. App. 3d at 187. The court noted that "[t]he importance of a proper ruling on a motion for substitution of judge is so great that some courts have held that the wrongful refusal of a proper request for substitution of judge renders all subsequent orders by that judge entered in the case void. [Citations.]" *Id*. Therefore, the court determined that the substitution of judge issue could be heard on interlocutory appeal.

¶ 15    Here, as in *Sarah Bush Lincoln*, the issue of whether the trial court erred in denying defendants' motion for substitution of judge as of right "bears directly upon the question of whether the order on appeal was proper." If the trial court did indeed err, as defendants assert, that error would be dispositive of the issue raised in the second appeal, namely, whether the trial court erred in holding defendants in contempt and appointing a receiver. Therefore, because the substitution of judge issue was outcome determinative of the second appeal, defendants were required to raise it at that time.

¶ 16    Defendants assert that they could not have raised the substitution of judge issue in their second appeal because at the time they briefed the second appeal, which was on an expedited briefing schedule, the instant appeal was also pending before the appellate court but was not ready for briefing because the record on appeal had not yet been completed by the clerk's office. Therefore, they assert, it was logistically impossible to argue that issue in the second appeal and, therefore, it is not forfeited. We disagree. A transcript of the trial court proceedings in which Judge Brennan denied the motion for substitution of judge was prepared as of May 9, 2011, and filed with this court on July 7, 2011. Defendants' brief in the second appeal was filed on November 23, 2011. Therefore, defendants could have raised the issue in the second appeal, and because that issue was dispositive of the other issues this court was addressing in that appeal, they needed to raise it then. Because they failed to do so, defendants have forfeited their right to raise it in this appeal.

¶ 17    C. Judgment Against Guarantors for Full Amount Due on Loan

¶ 18    Next, defendants argue that the trial court erred in entering judgment against them for full repayment of the loan, because section 1(c) of the guaranty, the carve-out provision, was a vague, ambiguous, overly broad, and unenforceable penalty provision. They also contend that the sole purpose of section 1(c) was to secure their performance, and that Illinois courts have refused to enforce such provisions in a contract. See *Telenois, Inc. v. Village of Schaumburg*, 256 Ill. App. 3d 897, 902 (1993).

¶ 19    Before determining whether section 1(c) is enforceable, we must first address the Bank's contention that defendants forfeited their appeal of the December 22, 2010, deficiency judgment because their notice of appeal was filed on March 9, 2011, more than 30 days after entry of that judgment.[5] The Bank asserts that although defendants filed a motion to reconsider on January 21, 2011, that motion only addressed the trial court's grant of Rule 304(a) certification and was not a posttrial motion under section 2-1203 of the Code (735 ILCS 5/2-1203 (West 2008)),[6] which would stay the time for filing an appeal.

¶ 20    Ordinarily, jurisdiction is conferred upon this court by the filing of a notice of appeal within 30 days of the entry of the final judgment from which the appeal is taken. Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008). However, Supreme Court Rule 303(a)(1) provides that if a timely postjudgment motion is filed, then the time in which to file a notice of appeal is tolled, and the appealing party must then file a notice of appeal "within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order." Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008). In order for a postjudgment motion to have the effect of tolling the time in which to appeal the judgment, that motion must be "directed against the judgment." Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008). To qualify as a postjudgment motion within the meaning of the rule governing the time for filing notice of appeals, a motion must request at least one of the forms of relief specified in section 2-1203 of the Code (735 ILCS 5/2-1203 (West 2008)), namely, rehearing, retrial, modification, vacation, or other relief directed against the judgment. *Vanderplow v. Krych*, 332 Ill. App. 3d 51, 53 (2002). The "other relief" referred to in section 2-1203 must be similar in nature to the other forms of relief enumerated in that section. *R&G, Inc. v. Midwest*

---

[5]We note that this issue was previously raised by the Bank in a motion to dismiss, which we denied. This ruling, however, does not preclude our consideration of the forfeiture issue which has been further briefed by the parties on appeal. *Frye v. Massie*, 115 Ill. App. 3d 48, 51 (1983).

[6]Section 2-1203 of the Code provides as follows:
"(a) In all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief.
    (b) A motion filed in apt time stays enforcement of the judgment except that a judgment granting injunctive or declaratory relief shall be stayed only by a court order that follows a separate application that sets forth just cause for staying the enforcement." 735 ILCS 5/2-1203 (West 2008).

*Region Foundation for Fair Contracting, Inc.*, 351 Ill. App. 3d 318, 321 (2004).

¶ 21    In this case, defendants' notice of appeal was filed on March 9, 2011, 77 days after final judgment was entered against defendants on December 22, 2010. The Bank argues that although defendants filed a motion to reconsider on January 21, 2011, that motion only challenged the trial court's Rule 304(a) finding and did not seek relief against the December 22, 2010, judgment. A Rule 304(a) finding is not a "judgment," the Bank argues, because it does not adjudicate the rights of the parties. Therefore, because the motion to reconsider did not seek relief from the December 22, 2010, judgment, it was not a posttrial motion under section 2-1203 of the Code (735 ILCS 5/2-1203 (West 2008)) and did not stay the time for appealing the underlying judgment or stay enforcement of the judgment.

¶ 22    For support, the Bank cites *D'Agostino v. Lynch*, 382 Ill. App. 3d 639 (2008). In *D'Agostino*, a $1,905,651 judgment was entered in plaintiffs' favor on August 14, 2003. Shortly thereafter, plaintiffs commenced supplementary proceedings to collect on the judgment pursuant to section 2-1402 of the Code (735 ILCS 5/2-1402 (West 2008)) but were only able to collect part of the debt. Plaintiffs then sought to issue citations to defendant's attorneys, arguing that defendant had given his attorneys funds in order to avoid payment of the judgment. *D'Agostino*, 382 Ill. App. 3d at 641. On November 7, 2007, the trial court denied that motion on the grounds that the attorneys were no longer in possession of the funds. On December 5, 2007, plaintiffs filed a "Motion to Amend Memorandum Decision and Judgment," asking the court for a Rule 304(a) finding that there was no just reason for delaying enforcement or appeal of the November 7, 2007, order. On December 12, 2007, the trial court granted plaintiffs' motion to amend and entered the Rule 304(a) finding. On January 10, 2008, plaintiffs filed a notice of appeal from that order and the November 7, 2007, order, which the attorneys moved to dismiss on the grounds that the November 7, 2007, order was a final order in a section 2-1402 proceeding and, therefore, was immediately appealable without a special finding. Plaintiffs argued that their December 5, 2007, motion was a postjudgment motion pursuant to section 2-1203 of the Code that tolled the finality and appealability of the turnover judgment pending its disposition. The appellate court disagreed and found that it did not have jurisdiction to hear the appeal because the plaintiffs' motion to amend "does not attack the judgment or its underlying rationale but, rather, accepts it and requests a Rule 304(a) finding," which "was not necessary because of Rule 304(b)(4)." *Id.* at 643.

¶ 23    Similarly, in this case, the Bank argues, the defendants' motion to reconsider the Rule 304(a) determination did not attack the underlying judgment and, therefore, the time for filing an appeal was not tolled and since more than 30 days passed before defendants filed a notice of appeal, defendants have forfeited their right to appeal the judgment.

¶ 24    Defendants argue that a motion asking the trial court to modify its judgment by eliminating the finding that the judgment would no longer be enforceable or appealable but instead be subject to modification or vacation does, in fact, attack the judgment. Further, they assert that pursuant to our supreme court's holding in *Kingbrook, Inc. v. Pupurs*, 202 Ill. 2d 24 (2002), the content of their motion was sufficient to qualify as a postjudgment motion that would toll the time for filing an appeal. In *Kingbrook*, the trial court entered summary judgment in favor of defendants on January 21, 2000. On February 17, 2000, plaintiff filed

a motion to reconsider, which simply stated that "plaintiff *** moves the Court to reconsider its decision granting severing [*sic*] judgment in favor of Defendants." *Id*. at 27. The trial court denied the motion on April 28, 2000, and on May 30, 2000, plaintiff filed a notice of appeal. Defendants moved to dismiss the appeal for want of jurisdiction on the grounds that the notice of appeal was late, because the motion to reconsider was not a proper postjudgment motion. The appellate court agreed and dismissed the appeal. *Id*.

¶ 25    On appeal, the only issue before our supreme court was whether plaintiff's motion was specific enough to toll the time for filing a notice of appeal. The supreme court found that it was. The court noted that neither the Code of Civil Procedure nor the supreme court rules demand any specificity in postjudgment motions in cases decided without a jury and stated that it would "decline to hold that post-judgment motions in nonjury cases must contain some undefined degree of detail, lest the filer risk that the reviewing court hold that the motion is not a motion at all. It is not clear that a nonspecific motion could not fulfill its role, and there is no reason to require the filer to guess how much detail is enough." *Id.* at 33. Therefore, the court found that the single sentence in the postjudgment motion was sufficient and remanded the case to the appellate court for consideration of the merits of the appeal. *Id*. at 35. See also *Monat v. County of Cook*, 322 Ill. App. 3d 499, 505 (2001) (holding that "only a motion that is 'totally devoid of any indication of points allegedly warranting relief' *** should be found insufficient" (internal quotation marks omitted) (quoting *Town of Sugar Loaf v. Environmental Protection Agency*, 305 Ill. App. 3d 483, 488 (1999), quoting *Sho-Deen, Inc. v. Michel*, 263 Ill. App. 3d 288, 293 (1994))).

¶ 26    Here, defendants argue that if, as in *Kingbrook*, a one-sentence, nonspecific motion to "reconsider" qualifies as a section 2-1203 motion, then their motion, which sought to modify the judgment by eliminating the Rule 304(a) finding, should as well. We agree. First, we note that *D'Agostino*, which was cited by the Bank, is factually inapposite from this case, because there the plaintiffs had requested the Rule 304(a) finding, while in this case defendants were asking the court to reconsider its Rule 304(a) determination so that the underlying judgment could be modified or vacated. Therefore, that case does not support the Bank's argument. Further, the holding in *Kingbrook*, as applied to the facts in this case, supports defendants' argument that their motion to reconsider was sufficient to toll the time for filing an appeal. Therefore, we find that defendants have not forfeited their right to challenge the underlying judgment.

¶ 27    Turning to the substance of defendants' argument seeking reversal of the judgment entered against them, defendants first assert that the carve-out provision of the guaranty was a vague, ambiguous, overly broad, and unenforceable penalty provision. Defendants contend that section 1(c), which provides that the guarantors become liable for full repayment if "the Borrowers contest, delay or otherwise hinder any action taken by the Agent or the Lenders in connection with the appointment of a receiver for the Premises or the foreclosure of the liens, mortgages or other security interests created by any of the Loan Documents," is ambiguous because it fails to alert borrowers of precisely what acts will trigger full recourse liability.

¶ 28    This court has held that, "[a]bsent ambiguity, the intention of the parties is to be ascertained by the language of the contract and not by the construction placed on it by the

-9-

parties. If a court can ascertain its meaning from the plain language of the contract, there is no ambiguity." *J.B. Esker & Sons, Inc. v. Cle-Pa's Partnership*, 325 Ill. App. 3d 276, 285 (2001). Here, section 1(c) states that if the borrowers "contest, delay or otherwise hinder any action" taken by the Bank in connection with the appointment of a receiver or in hindrance of the foreclosure, the guarantors are liable for the full amount of the loan. Defendants' interlocutory appeal of the trial court's appointment of a receiver clearly qualifies as contesting the Bank's actions in connection with the appointment of a receiver that would trigger full repayment liability. Therefore, section 1(c) is not a vague or ambiguous contract provision.

¶ 29    Defendants next argue that section 1(c) is unenforceable because its sole purpose is to secure their performance and that Illinois courts have refused to enforce such provisions in a contract. See *Telenois, Inc. v. Village of Schaumburg*, 256 Ill. App. 3d 897, 902 (1993) ("if the purpose of a clause fixing damages is merely to secure a party's performance, it will be treated as a penalty and only actual damages proven can be recovered"). Defendants assert that the full liability provision was triggered by their decision to contest the appointment of a receiver, but that there is no correlation between the additional $94 million they owe as a result and any actual damages suffered by the Bank, because their actions only resulted in a one-month delay in the appointment of a receiver. Therefore, defendants contend that the sole purpose of the provision was to secure performance of the contract by discouraging them from taking any action that would hinder or delay the Bank. Defendants further assert that damages are intended to compensate an injured party but that where the amount of damages awarded is unrelated to the injury suffered, the damages clause amounts to an unenforceable penalty. See *Raffel v. Medallion Kitchens of Minnesota, Inc.*, 139 F.3d 1142, 1146 (7th Cir. 1998) ("Where a damages clause is designed to assure the plaintiff more than its actual damages, and where the amount of the damages is invariant to the gravity of the breach, then the damages clause is not a reasonable effort to estimate damages, and is a penalty.").

¶ 30    In response, the Bank argues that courts in other jurisdictions have uniformly found that carve-out provisions in nonrecourse contracts are valid and enforceable. Given the dearth of Illinois case law, this appears to be an issue of first impression in the state. We acknowledge that decisions outside this state are not binding authority, but we may nevertheless consider such decisions as persuasive authority. One such case relied upon by the Bank to support its argument for enforcing section 1(c)'s carve-out provision is *CSFB 2001-CP-4 Princeton Park Corporate Center, LLC v. SB Rental I, LLC*, 980 A.2d 1 (N.J. Super. Ct. App. Div. 2009). In *CFSB*, the lender made a loan to SB Rental in the amount of $13,300,000, which was memorialized by a note and secured by a first mortgage encumbering commercial property and by a guaranty of payment executed by defendants. *Id*. at 3. The loan was a nonrecourse obligation, which precluded the lender from seeking recovery against either SB Rental or its principals in the event of a default. *Id*. However, the mortgage note contained a carve-out clause, providing that the debt would become a full recourse loan if the borrower failed to obtain the lender's prior written consent to any subordinate financing encumbering the property. *Id*. During the term of the loan, SB Rental procured $400,000 in subordinate financing and pledged a $400,000 second mortgage on the property without first obtaining plaintiff's written consent. *Id*. The second mortgage was fully satisfied within 7 months;

-10-

however, when 18 months later, SB Rental failed to make its monthly mortgage payment to CSFB, the bank instituted a foreclosure action, which SB Rental did not contest. *Id*. Accordingly, summary judgment was entered in plaintiff's favor and the property was sold at a sheriff's sale. The lender then instituted an action to recover the amount still owed on the mortgage note. Defendants argued that since plaintiff was not harmed by the added encumbrance on the property, the breach was unrelated to any damages suffered by the plaintiff and therefore, the nonrecourse carve-out clause extracted an unenforceable penalty. *Id*.

¶ 31     The trial court entered summary judgment in the lender's favor and the appellate court affirmed, stating that "[n]on-recourse carve-out clauses like the one here are not considered liquidated damages provisions because they operate principally to define the terms and conditions of personal liability, and not to affix probable damages. Generally speaking, because non-recourse loans may create issues of a borrower's motivation to act in the best interest of the lender and the lender's collateral, 'lenders identified defaults that posed special risks and carved them out of the general nonrecourse provision.' [Citation.]" *Id*. at 5. Further, the court stated that "[t]he carve-out clause is not a liquidated damages provision for yet another reason: it provides for only actual damages. Unlike the typical stipulated damages provision which reasonably estimates an amount otherwise difficult to compute, the carve-out clause permits the lender to recover only damages actually sustained, namely the amount remaining on the loan at the time of breach. Such an amount is fixed by the terms of the loan and is therefore neither speculative nor incalculable." *Id*. See also *G3-Purves Street, LLC v. Thomson Purves, LLC*, 953 N.Y.S.2d 109, 114 (N.Y. App. Div. 2012) (holding that a carve-out provision that provided for the recovery of actual damages incurred by the lender did not constitute an unenforceable penalty). The Bank argues that *CSFB*, *G3-Purves Street, LLC*, and similar holdings from other jurisdictions support a finding that the carve-out provision at issue in this case is valid and enforceable.

¶ 32     The Bank also asserts that defendants' argument that the carve-out is an unenforceable restraint on their right to defend themselves and to seek due process has consistently been rejected by courts in other jurisdictions. For instance, the Bank cites *Federal Deposit Insurance Corp. v. Prince George Corp.*, 58 F.3d 1041 (4th Cir. 1995), in which defendants obtained a loan to finance the development of a resort community. *Id*. at 1044. The note limited the borrower's liability for a deficiency judgment upon foreclosure but stated that " 'no limitation of liability or recourse *** shall *** apply to the extent that Holder's rights of recourse to the property which is then subject to the Mortgage are suspended, reduced or impaired by or as a result of any act, omission or misrepresentation of' " the borrower. *Id*. The borrowers defaulted on the loan and the Federal Deposit Insurance Corporation (FDIC), which became the holder of the note after the bank became insolvent, filed suit and obtained a summary judgment and a decree of foreclosure. Four days before the foreclosure sale, the borrowers filed a bankruptcy petition, which stayed the sale. *Id*. at 1045. After the stay was lifted, the FDIC completed the foreclosure and brought an action for a deficiency judgment against the borrowers based on the carve-out provision. The district court determined that the filing of the petition in bankruptcy by the borrower was an "act" described in the note that triggered its recourse provisions. *Id*.

¶ 33      On appeal, the borrowers argued that they had a statutory right to resort to the bankruptcy court and that any waiver of that right was void as against public policy. *Id*. at 1046. The appellate court disagreed, stating that "[t]his argument ignores the fact that the note did not prohibit [the borrower] from resorting to bankruptcy; it merely provided that if [the borrower] took certain actions it would forfeit its exemption from liability for any deficiency." *Id*. The court further stated that "[t]he principle that contracts in contravention of public policy are not enforceable should be applied with caution and only in cases plainly within the reasons on which that doctrine rests. It is only because of the dominant public interest that one who ... has had the benefit of performance by the other party will be permitted to avoid his own promise. [The borrower] clearly benefitted from the lender's performance; it obtained a loan for one hundred percent of the capital originally required to finance the project. One of the promises [the borrower] gave in return was that its exemption from liability for any deficiency in the event of foreclosure would be removed to a limited extent if it voluntarily took steps that suspended, reduced or impaired the lender's rights of recourse to the collateral for the loan." (Internal quotation marks omitted.) *Id*. at 1047. Similarly, in this case, the Bank argues that defendants were not denied the right to contest the appointment of a receiver and to file defenses to the foreclosure, but that consequences would be enforced if they did so.

¶ 34      Defendants assert that some carve-out provisions, namely, those that correlate to actual damages to collateral, are enforceable, but that there are no cases to support upholding the carve-out provision at issue here, which imposes full liability regardless of whether their actions have damaged the value, liquidity or accessibility of the collateral and is merely being used to prevent them from exercising their due process rights and to compel immediate performance. Defendants primarily rely on *ING Real Estate Finance (USA) LLC v. Park Avenue Hotel Acquisitions LLC*, 907 N.Y.S.2d 437 (N.Y. Sup. Ct. 2010) (table), for support. In *ING*, the lender made a $145 million nonrecourse loan to the borrowers, which provided that the lender could not seek a deficiency judgment against the borrowers in the event of a default but could seek full recourse from the borrowers and the guarantors if the borrower incurred any indebtedness. After the borrowers failed to make a payment on the outstanding principal balance, the lender foreclosed and sought full recourse from the guarantors on the grounds that the borrower was two weeks late in paying real estate taxes, which resulted in a tax lien on the property. *Id*. at 2. In granting the defendants' motion to dismiss the full-recourse claims, the trial court stated that "[i]mmediate liability for the entire debt is not a reasonable measure of any probable loss associated with the delinquent payment of a relatively small amount of taxes." *Id*. at 5. The court further stated that "[s]uch an unlikely outcome could not have been intended by the parties, sophisticated commercial borrowers and lenders aided by competent counsel at the time of the drafting." *Id*. Similarly, in this case, defendants contend, they should not be liable for the full amount of the loan simply because they contested the appointment of a receiver, resulting in a one-month delay of her appointment.

¶ 35      Because we find *ING* distinguishable from the instant case, we disagree. The holding in *ING* was primarily based on the court's finding that the triggering event for full-recourse liability did not occur since another provision of the contract provided for a cure period

during which the taxes could be paid. *Id.* The facts in *CSFB* and *Blue Hills Office Park* are more analogous to the facts in this case and, therefore, support a finding that the carve-out provision in the loan agreement at issue is enforceable. Here, the Bank filed an emergency motion for the appointment of a receiver on October 22, 2009. The trial court granted that request on November 20, 2009. Defendants appealed to this court, which heard the appeal on an expedited basis, affirming the trial court on March 31, 2010. Defendants then filed a petition for leave to appeal, which the supreme court denied on September 29, 2010. Thus, defendants disputed the appointment of a receiver for 341 days, during which the Bank incurred substantial additional legal fees.

¶ 36    Further, we reject defendants' assertion that the carve-out provision precludes them from exercising their due process right to defend themselves in the foreclosure action. As the court in *Federal Deposit Insurance Corp. v. Prince George Corp.* found, defendants were not precluded from contesting the appointment of a receiver or filing defenses to the foreclosure action, but by taking those actions they forfeited their exemption from liability for full repayment of the loan.

¶ 37                                    D. Charging Orders

¶ 38    Lastly, defendants argue that the trial court erred in entering charging orders against 72 LLCs and limited partnerships in which they have an interest, because the court did not have jurisdiction over those entities. Defendants assert that the LLCs and limited partnerships were "necessary parties" that must be joined in the litigation before charging orders can be entered. The Bank agrees with defendants' assertion that none of the 72 entities were made a party to the litigation and that service of the citation on the judgment debtor alone does not create a lien on the distributional interests of an LLC (see *First Mid-Illinois Bank & Trust, N.A. v. Parker*, 403 Ill. App. 3d 784, 786 (2010)), but asserts that those entities are not necessary parties and need not be joined in the litigation in order for charging orders to be entered.

¶ 39    Section 30-20(a) of the Illinois Limited Liability Company Act provides, in part that "[o]n application by a judgment creditor of a member of a limited liability company or of a member's transferee, a court *having jurisdiction* may charge the distributional interest of the judgment debtor to satisfy the judgment." (Emphasis added.) 805 ILCS 180/30-20(a) (West 2008). Similarly, section 703(a) of the Uniform Limited Partnership Act (2001) provides, in part, that "On application to a court of competent jurisdiction by any judgment creditor of a partner or transferee, the court may charge the transferable interest of the judgment debtor with payment of the unsatisfied amount of the judgment interest." 805 ILCS 215/703(a) (West 2008).

¶ 40    Defendants contend that pursuant to these two provisions, a court must obtain jurisdiction over an LLC or a limited partnership in order to charge a judgment debtor's distributional interests in them. Defendants assert that *Schak v. Blom*, 334 Ill. App. 3d 129 (2002), is analogous and supports their argument. In *Schak*, the appellate court held that when a debtor has an interest in a land trust, a citation to discover assets must be served on both the trustee of the land trust and the judgment debtor. *Id.* at 133. Defendants contend that similarly in this

-13-

case, the 72 LLCs and limited partnerships must be served with the citation to discover assets or else the trial court lacks jurisdiction to enter an order concerning the property rights of those entities.

¶ 41    However, *Schak* is distinguishable from the instant case, because charging orders on a distributional interest in an LLC or a limited partnership gives the lender very limited rights, which are different from the transfer of a beneficial interest in a land trust, which would make the transferee the owner of the beneficial interest itself, with power of direction over the trust and entitlement to control the trust property. Further, as the Bank asserts, charging orders on distributional interests do not affect the rights or interests of the LLC to the degree necessary to require that it be made a party. Under the Illinois Limited Liability Company Act (Act), a charging order only gives the judgment creditor the right to receive distributions to which the member would otherwise be entitled, and if the charging order is foreclosed, the purchaser would have only the rights of a transferee of distributional interests. Under section 30-1(a) of the Act, a member of an LLC "is not a co-owner of, and has no transferable interest in, property of a limited liability company." 805 ILCS 180/30-1(a) (West 2008). Further, section 30-5 of the Act provides that a transfer of a distributional interest in an LLC does not give the transferee any rights as a member but only the right to receive distributions by the LLC, while section 30-10 provides that transferee may become a member only if all other members consent (805 ILCS 180/30-10(a) (West 2008)). A "transferee who does not become a member is not entitled to participate in the management or conduct of the limited liability company's business, require access to information concerning the company's transactions, or inspect or copy any of the company's records." 805 ILCS 180/30-10(d) (West 2008). Therefore, an Illinois LLC has no interest that is affected when a charging order is entered on a judgment debtor's distributional interest because the party in whose favor the charging order is entered is not an owner of the LLC and has no authority over the LLC's affairs and can only receive distributions. Hence, the LLC has no interest to be protected and need not be made a party.

¶ 42    Further, courts "are obliged to construe statutes to avoid absurd, unreasonable, or unjust results." *Roselle Police Pension Board v. Village of Roselle*, 232 Ill. 2d 546, 558-59 (2009). It would be impractical and unnecessarily costly to require a lender seeking charging orders to serve all of the entities in which a borrower has an interest, particularly in a case such as this one, where there are 72 LLCs and limited partnerships. The language of the Illinois Limited Liability Company Act supports a finding that a court only needs to have jurisdiction over the judgment debtor to enter charging orders against the judgment debtor's interest. Therefore, we find that the trial court did not err in entering charging orders against the 72 LLCs and limited partnerships even though they were not named as parties.

¶ 43                            III. CONCLUSION

¶ 44    For the foregoing reasons, we affirm the trial court.


¶ 45    Affirmed.